UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10833MBB

NICHOLAS E. HURLIN          )
    Plaintiff               )
                            )
v.                         )
                            )
TOWN OF ROWLEY,            )
    Defendant               )

## DEFENDANT TOWN OF ROWLEY'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the defendant Town of Rowley, hereby moves this Honorable Court to dismiss this action by summary judgment. As grounds for this motion, the defendant submits the following Statement of Undisputed Material Facts and Memorandum of Law.

For purposes of this Summary Judgment **only,** defendant states as follows:

1.      This claim arises out of statements made by the plaintiff to the Rowley Board of Health Chairman Charles Costello and subsequently to the Rowley Board of Selectmen on January 8, 2001. **(Plaintiff's Amended Complaint, paragraph 4).**

2.      The plaintiff alleges that the Town of Rowley defamed, slandered and libeled the plaintiff on January 8, 2001 and then proceeded to punish the plaintiff by issuing a defamatory letter dated January 9, 2001, without providing the plaintiff with a hearing or due process. **(Plaintiff's Amended Complaint, paragraph 5).**

3.      The plaintiff's Amended Complaint contains four Counts. Count I alleges that the plaintiff's right to address representatives without fear of intimidation, defamation and reprisals was violated; Count II appears to allege a claim pursuant to the First Amendment; Count III appears to allege a violation of the plaintiff's civil rights

1

based upon the issuance of an order prohibiting him free access to town offices and denial of a hearing and investigation. Count III also alleges an interference with business relationships, including the denial of a license to a sub-contractor of the plaintiff's because of an infirmity, the refusal to administer a septic installer's examination to the plaintiff and interference with the issuance of septic installer's licenses by other municipalities. Count IV makes general allegations that the defendant committed unfair and unlawful practices in violation of their duties. **(Plaintiff's Amended Complaint).**

4.    At the time of the alleged incidents on January 8 and 9 2001, the plaintiff was involved in litigation with the Town of Rowley regarding property he owned at 27 Central Street in Rowley from 1987-1995. The Town of Rowley instituted the first litigation after the plaintiff had converted the property at 27 Central Street from a single-family residence into an illegal two-family residence. That litigation ended when the Court issued a permanent injunction ordering the plaintiff to remove the second floor apartment. The plaintiff subsequently sued the Town of Rowley in 1991. That litigation arose after the Town of Rowley had condemned 27 Central Street because of a failed septic system which the plaintiff failed to replace. That case was recently tried to an Essex Superior Court jury and resulted in a defense verdict. **(See Affidavit of Pamela J. Fitzgerald attached as Exhibit 1).**

5.    On the morning of January 8, 2001, the plaintiff went to the Rowley Board of Health office to discuss the septic issues at 27 Central Street. **(See Deposition of Nicholas Hurlin pp. 9-10 attached as Exhibit 2).**

6.    The plaintiff was asked to leave the Board of Health office by the Health Agent Alyssa Rusiecki. **(Exhibit 2, p. 12 and Memorandum of the former Board of**

**Health Agent Rusiecki to the Rowley Board of Selectmen dated January 8, 2001**
**attached as Exhibit 3).**

7.    The plaintiff has been asked to leave the Board of Health office on previous occasions. **(Exhibit 2, p. 13).**

8.    After leaving the Board of Health office on January 8, 2001, the plaintiff proceeded directly to the Board of Selectmen's office. **(Exhibit 2, p. 15).**

9.    The plaintiff went to the Selectmen's office to make a complaint about the Board of Health and being refused service that he needed in order to make repairs at 27 Central Street. **(Exhibit 2, pp. 15-16).**

10.    The person the plaintiff spoke with at the Board of Selectmen's office indicated that he/she would refer his complaint to the Rowley Board of Health Chairman Charles Costello. **(Exhibit 2, p. 21).**

11.    At some point on January 8, 2001, the plaintiff received a phone call from Charles Costello. **(Exhibit 2, p. 22).**

12.    The plaintiff complained to Mr. Costello that he was not receiving assistance from the Board of Health and told Mr. Costello that the fact that the Board of Health hindered and obstructed people from resolving their problems could be a safety issue **(Exhibit 2, p. 25).**

13.    Although the plaintiff disputes exactly what words were used, he admits that he mentioned the shooting which had occurred in Wakefield, Massachusetts less than two weeks prior to January 8, 2001 and a shooting incident in Colebrook, New Hampshire. The plaintiff told Mr. Costello that he didn't want the same thing to happen in Rowley or any other town. **(Exhibit 2, pp. 25-29).**

14.    The Colebrook, New Hampshire shooting occurred in 1997. An individual named Carl Drega, who reportedly had feuded with town officials for years

over zoning and other problems, shot four people, including an attorney, a newspaper editor and two State Police officers. Mr. Drega also wounded four other officers. **(See copies of newspaper articles regarding the Colebrook shootings attached as Exhibit 4)**.

15.     The Wakefield shootings occurred at an office complex in Wakefield, Massachusetts. An employee shot and killed 7 co-workers. **(See copies of newspaper articles regarding the Wakefield shootings attached as Exhibit 5)**.

16.     Mr. Costello told the plaintiff that he felt threatened by the statements made by Mr. Hurlin. Mr. Hurlin claims that he told Mr. Costello that he should not take the statements as a threat. **(Exhibit 2, p. 29)**.

17.     Mr. Hurlin brought up the shootings in Wakefield and Colebrook, New Hampshire, to prevent it from happening in Rowley. It was the plaintiff's conclusion that the way the Board of Health operates could bring about such an event as the shootings in Wakefield and Colebrook. **(Exhibit 2, p. 30)**.

18.     On the evening of January 8, 2001, the plaintiff appeared at a Board of Selectmen meeting. The plaintiff had no items on the agenda. **(Exhibit 2, p. 32 and Rowley Board of Selectmen Meeting Minutes for January 8, 2001 and transcript of meeting minutes attached as Exhibit 6)**.

19.     The plaintiff went to the Board of Selectmen to make a complaint about Mr. Costello and the Board of Health. He requested that the Selectmen go into an executive session to discuss his earlier conversation with Mr. Costello. **(Exhibit 2, p. 33)**. The Selectmen refused to do so. **(Exhibit 6)**.

20.     One of the Selectmen told the plaintiff that he was aware of the threats he made to Mr. Costello  and that Mr. Costello was upset about what he had said. **(Exhibit 2, p. 34)**.

4

21.    During his conversation with the Board of Selectmen, the plaintiff reiterated the statement that he wanted to prevent an incident such as the shootings in Wakefield and Colebrook, from happening in Rowley. **(Exhibit 2, pp. 34-35 and Exhibit 6).**

22.    The plaintiff was told by a Selectman that he should not make statements such as the ones he made because town employees might take them as a threat. **(Exhibit 2, pp. 35-36).**

23.    After leaving a Board of Selectmen's meeting on January 8, 2001, the plaintiff proceeded to the Board of Health meeting.  The plaintiff had no items on the agenda. **(Exhibit 2, pp. 36-37 and Rowley Board of Health Meeting Minutes attached as Exhibit 7).**

24.    The plaintiff went to the Board of Health to address the Chairman, Mr. Costello, face to face, to tell him that he had not intended his statements as a threat. He claims that an illegal executive session was held to discuss him. **(Exhibit 2, p. 37, 76-78).**

25.    The plaintiff claims that he also made similar statements about the shootings in Wakefield and Colebrook to the Department of Environmental Protection, the Lieutenant Governor's Office and accidentally to the FBI on January 8, 2001. **(Exhibit 2, page 37).**

26.    Mr. Costello felt threatened by the plaintiff's statements because of the plaintiff's previous argumentative and disruptive behavior both at the Board of Health office and at Board of Health meetings.  In addition, the plaintiff had never used such threatening language before and his statements were made only days after seven people were brutally murdered at an office complex in Wakefield, Massachusetts. After Mr. Costello ended his conversation with the plaintiff, he called the Board of Selectman Chairman, A.J. Paglia to report the threats because Mr. Paglia had law

enforcement experience. The Rowley Police Department was then notified and interviewed Mr. Costello. **(See Affidavit of Charles Costello attached as Exhibit 8, the Defendant's Answers to the Plaintiff's Interrogatories attached as Exhibit 9 and the Rowley Police Department Incident Report attached as Exhibit 10).**

25.    The Chief of Police subsequently sent the plaintiff a letter on January 9, 2001, advising the Plaintiff that because of his threatening behavior on the evening of January 8, 2001, and his statement that it was his desire to "prevent another Colebrook, New Hampshire or Wakefield, Massachusetts," together with similar threatening behavior in the past,  he was barred from entering Town Hall and the Town Hall Annex except by appointment made 24 hours in advance  and would be escorted to any such appointments by a member of the Rowley Police Department. **(See letter to Nicholas Hurlin from Kevin Barry, Chief of the Rowley Police Department dated January 9, 2001, attached hereto as Exhibit 11).**

26.    A memorandum was sent on January 9, 2001 by the Chairman of the Board of Selectmen, G. Robert Merry, to all department  heads, employees, board and commissions, advising them of the conditions regarding Mr. Hurlin set forth in Chief Barry's letter.  The memorandum does not make a reference to the threatening statements made by the plaintiff the previous evening.  The memorandum is a public document. **(See Memorandum dated January 9, 2001 attached as Exhibit 12).**

27.    Mr. Hurlin responded by letter dated January 24, 2001 to Chief Barry requesting a retraction. **(See letter dated January 24, 2001 attached hereto as Exhibit 13).**

28.    The conditions set forth in the January 9, 2001 letter from Chief Barry were rescinded in 2003. **(See Memorandum from S.J. Paglia dated August 18, 2003 attached as Exhibit 14).**

29.     Jeson Ingraham, a reporter from the Newburyport Daily News was present at the Board of Selectmen's meeting on January 8, 2001. He subsequently published three articles regarding the threatening statements made by the plaintiff and the subsequent conditions imposed upon the plaintiff by the Chief of Police. **(See copies of the Newburyport Daily News articles attached as Exhibits 15A, 15B and 15C).**

30.     In the article dated January 10, 2001, Chief Barry is quoted as saying that certain conditions  had been imposed on the plaintiff if he wanted to visit  Town Hall. **(Exhibit 15B).**

31.     In the article dated January 11, 2001, Mr. Ingraham states that the conditions imposed upon the plaintiff were given to the Daily News by a town employee[1]. **(Exhibit 15C).**

32.     The plaintiff alleges that the January 9, 2001 letter and the conditions imposed upon him prevented him from doing business but he could not recall a specific instance at his deposition. **(Exhibit 2 at pp. 48-49)**.

33.     The plaintiff also alleges that some unnamed person in town interfered with his attempts to obtain a septic installer's license in Newburyport and Georgetown. He claims he was told by the Newburyport Health Agent, Mark Tolman, that Rowley officials told him that the plaintiff should not have a license. **(Exhibit 2 at pp. 63 and 66)**.

34.     He was able to obtain an installer's license in Newburyport but it was delayed. **(Exhibit 2 at pp. 67-68)**.

35.     The plaintiff also claims the defendant interfered with his attempts to become a state Title 5 inspector but admitted he has no evidence to support this claim. **(Exhibit 2 at pp. 69-70)**.

36. . The plaintiff's claims for defamation are based upon his allegation that he was drummed out of a public meeting on January 8, 2001 when he was trying to make a complaint and letters were sent stating he had made threats. **(Exhibit 2 at pp. 54-56, 82-83).**

37. The plaintiff is not aware that the letter he was sent by the Chief of Police was ever seen by anyone other than himself, town officials or counsel for the town. **(Exhibit 2 at p. 55).**

38. The plaintiff also claims that the Memorandum sent by the Chairman of the Board of Selectmen on January 9, 2001 and the articles which appeared in the Newburyport Daily News were defamatory. **(Exhibit 2 at pp. 80-82).**

<div style="margin-left: 40%;">

The defendant,
Town of Rowley,
By its attorneys,


/s/   Pamela J. Fitzgerald
Pamela J. Fitzgerald, BBO #563130
Brody, Hardoon, Perkins And Kesten, LLP
One Exeter Plaza
Boston, MA  02116
(617) 880-7100

</div>

Dated: 1/31/05

---

[1] As stated above, the Memorandum dated January 9, 2001 sent by the Chairman of the Board of Selectmen is a public document.  See M.G.L. c. 4 §7.