# EXHIBIT 3

CONFIDENTIAL

FILE COPY

**Rowley Board of Health**

# Memo

**To:** file

**From:** Alyssa Rusiecki, RS – Public Health Agent and Wendy Hansbury – Administrative Asst.

**CC:** Board of Selectmen

**Date:** 1/08/01

**Re:** Nicholas Hurlin office visit

---

**WH's report:** Mr. Hurlin came into the office on the morning of January 8, 2001, for, he stated, two specific reasons. The first item was to submit, for the Chairman of the Board of Health to review, a "soil investigations report" for the property at 27 Central Street. The second item was to request that the "Permit to Construct Disposal System" be issued to him because, he stated, the "hydrology report requested" had been turned in. I, acting as Board of Health clerk, questioned "the hydrology report" and who had asked Mr. Hurlin for this report, as the minutes of the Board of Health meetings do not reflect this request by the Board. Mr. Hurlin insisted this request was made, although I had never heard the Agent or the Board discuss the terminology "hydrology report" with respect to Title 5, soil evaluations, or percolation tests. With respect to the DSC permit, I stated that Title 5 requires plans to be approved and acted upon within 3 years and that the plan Mr. Hurlin was referring to had been submitted in 1991 and it or its permit was no longer valid. Mr. Hurlin insisted that it had been delivered to Mr. White, a former Board Chairman, and that it was our problem we did not have the plans on file. I informed Mr. Hurlin that at no time in the year 2000 were plans for 27 Central Street submitted. He began arguing the validity of the 1991 plan and asked for our file copy (from 1991) to make copies to submit to our office. I told Mr. Hurlin that I am not able to remove files from this office. I asked Mr. Hurlin to leave and stated that I would bring his concerns before the Chairman as he had requested. He argued that I was being uncooperative, that the hydrology report was enough for me to issue a Permit, that I was creating on a hardship situation and that someone should stop the Board of Health. I again asked Mr. Hurlin to leave as I felt that there was nothing more with which I could discuss or help. Mr. Hurlin then became relatively incoherent, discussing the "lemon law." At this time, the Agent came into the office and asked Mr. Hurlin to leave.

Note: MaryAnn Waz was a witness to the above-mentioned actions.

**AR's report:** On January 8th, 2001, the Planning Board Secretary, MaryAnn Waz, summoned me from my private office, saying that Nick Hurlin was in the Board of Health office, which MaryAnn shares with us, and she felt that Nick was giving Wendy a "hard time" and that he was disrupting the community office.

I came downstairs and observed Nick Hurlin leaning over the file cabinet pointing his finger in Wendy's face and he was clearly arguing with her. In my opinion, he was disrespecting her personal boundaries and professional authority. He was not letting her get a word in edgewise. When I came in, Nick was asking Wendy repeatedly, "Do you know what the lemon law is? Do you know what the lemon law is?" I felt that his body language was threatening and his language was non-productive. I have been instructed by the Board of Health to ask Mr. Hurlin to leave the office when he presents himself in a

1

manner that is disruptive to the operations of the office. I said once, "Mr. Hurlin you have to leave now." He was so agitated that he didn't hear me the first time, began to leave on his own, and only when he turned around did he only noticed that I was there, and said, "Oh you are here, I want to talk to you." I said "I cannot talk to you, I'll let the Chairman know, please leave now." Mr. Hurlin left.

(For the record during the first week in January 2001, Mr. Hurlin called my private "Site Design" answering machine and left his name and phone number requesting a septic plan. I did not return his call).

activities of January 8, 2001.