# EXHIBIT 6

JANUARY 8, 2001

1

## Minutes of the Rowley Board of Selectmen's Meeting

Monday, January 8, 2001, Meeting convened at 7:00 the Selectmen's Office

Members present: G. Robert Merry, Chairman, Robert Madden and Attilio Paglia. (Town Administrator, Deborah Eagan, Executive Secretary, Beth Liffers)

Public Attendees: Jeson Ingraham, Cliff Pierce, Eric Grover, James Broderick, Richard Szarythe, Jack DiMento, Nick Hurlin

G. Robert Merry opened the meeting at 7 p.m.

Appointments/Public Hearings
**7:00 p.m. APPOINTMENT:** Planning Board Member Cliff Pierce to discuss Master Planning process. Pierce announced that there is a community development meeting at 7:00 p.m. on January 24, 2001 at the Pine Grove School. He said that this meeting is the first step in obtaining a $30,000 grant from the state to partially fund a master planning process.

## General Business
1. Robert Madden moved to approve the 2002 Compensation Schedule as approved by the Personnel Board on January 3, second Attilio Paglia, all in favor – aye.

2. G. Robert Merry stated that we had a vacancy for Animal Control Officer and there was one applicant, Reed Wilson. Attilio Paglia moved to approve Reed Wilson for a 3-year appointment term to expire June 30, 2004, second Robert Madden, all in favor – aye.

3. G. Robert Merry stated that there is also a vacancy for the position of Animal Inspector. Robert Madden explained that this is a one-year position that is up April 1 of each year. Attilio Paglia moved to appoint Reed Wilson until April 1, 2001, second Robert Madden all in favor – aye.

4. G. Robert Merry stated that the date needed to be set for the Annual Town Meeting; Robert Madden moved to set the date of the Annual Town Meeting for May 7, 2001 at 7:30 p.m. at the Pine Grove School, second Attilio Paglia, all in favor – aye.

5. Robert Madden moved to set the date of the Special Town Meeting for May 7, 2001, 7:30 p.m. at the Pine Grove School, second Attilio Paglia, all in favor – aye.

6. G. Robert Merry called for a motion to open the Annual Town Meeting Warrant; Attilio Paglia moved to open the ATM Warrant, second Robert Madden, all in favor –aye. Robert Madden added that he recommended that the Warrant be closed on February 5, 2001 at 7:00 p.m., second Attilio Paglia, all in favor – aye.

## Announcements
1. Christmas Tree drop off for Rowley residents at Eiras Park parking lot area in front of baseball field adjacent to Smith Lane through January 13.

2. G. Robert Merry announced that there is a vacancy on the Recreation Committee; any resident interested in serving should contact the Recreation Commission or the Board of Selectmen.

G. Robert Merry called for a moment of silence for Russ Hodgdon who passed away over the weekend. He said that Hodgdon was a Shellfish Commissioner, a member of the Planning Board, elected Town Constable and was always willing to lend a hand.

**7:15 p.m. PUBLIC HEARING-** Pole Hearing - Rowley Municipal Light Department Distribution Officer Eric Grover. Grover stated that the purpose of this hearing is to set a stub pole on Hillside Street; there is a pole that is leaning over. He said he would like to set up a pole across the street from pole 5. G. Robert Merry asked if anyone in the audience would like to speak to this Pole Hearing, no one came forward. Merry read from the legal notice that was in the newspaper. Robert Madden moved to approve placement of pole 5-S, second Attilio Paglia, all in favor - aye.

**General business continued.**
7. G. Robert Merry stated that there are two soil suitability applications from Warren Grover for lots 7 and 8 on Cross Street. He said that the applications appear to be in order. It was decided that the Public Hearings would be held on February 26, 2001 for lot 7 at 7:30 p.m. and lot 8 at 7:40 p.m.

**7:30 APPOINTMENT -** Open Space Committee Chairman Darrell DeTour to discuss grant application and letter of support. G. Robert Merry read letter into minutes, which is from the Board of Selectmen supporting the Hunsley Hills Project. Attilio Paglia moved to approve the letter to be sent, second Robert Madden, all in favor - aye.

**General Business continued**
10. G. Robert Merry stated that a reminder letter should be mailed to Larry Kelly of Kendall Construction Corp on plowing and sanding River's Edge Road. He said that the bill has already been mailed to him. Attilio Paglia moved to approve sending the letter, second Robert Madden, all in favor - aye.

11. G. Robert Merry stated that there is a letter to the Executive Office of Public Safety authorizing Fire Chief James Broderick to sign/execute grant contracts. Robert Madden moved to approve signing and sending the letter, second Attilio Paglia, all in favor aye.

Attilio Paglia left the meeting at 7:35 p.m.

8. G. Robert Merry read a letter from Triton School Superintendent Garry Murphy on Board of Selectmen appointee to Triton Agreement Review Committee. Merry stated that Warren Appell has stated that he is interested. Robert Madden moved to appoint Warren Appell as the Board of Selectmen's representative to the Triton Agreement Review Committee, second G. Robert Merry All in favor - 2-0 Attilio Paglia not present.

9. License application - Veterans Mobil to store combustible flammable substances. Fire Chief Jim Broderick stated that this needs to be done every five years but since Veterans has had a change of

ownership that this is not a renewal but a license application. There are four separate applications for Veterans Mobil, 3 underground tanks and one above ground tank. G. Robert Merry stated that the fee would be waived this time due to the lax in time. Public Hearing set for January 22, 2001 at 7:15 p.m.

Robert Madden moved to approve the minutes of December 18, 2000, second G. Robert Merry, all in favor - 2-0, Attilio Paglia absent.

12. G. Robert Merry stated that we have a letter from Mintz, Levin and Cohn on special permit application for Omnipoint. Merry asked if there were any recommendations, he stated that he recommendation is that he isn't sure he wants to support the application to the Planning Board. Robert Madden stated that he would like to take it under advisement until the Planning Board comes forward. Merry suggested that a letter be sent to the Planning Board that the Board of Selectmen is not interested in this particular project. Robert Madden moved to send the letter to the Planning Board, second G. Robert Merry - all in favor 2-0, Attilio Paglia absent.

G. Robert Merry stated that this wraps up the agenda for the regular session of Board of Selectmen. He asked Mr. Nick Hurlin if there was something that he would like to discuss. He said that what he would like to discuss is general public business and the second part is for closed session. G. Robert Merry stated that he would need something in writing requesting a closed session and then the Board of Selectmen would determine the Executive Session. Hurlin stated that the Executive Session would be about personalities. Merry stated that might not be a legitimate Executive Session. Merry stated that he would need that in writing because if it is dealing with a town employee, then the employee has the authority to either have it in Executive Session or General Session. Merry stated that if he has something in open session that could be done now. Hurlin stated that this goes back to the 1980's at a Selectmen's meeting. He said during the recess of the meeting the Selectmen tried to conspire to have his apartment taken away from him. Merry told Hurlin that he would have to stop him from going on because there is currently a lawsuit involving that particular property. Hurlin said that this has to do with a letter he received from Madeline Norris of the DEP. Merry asked what Hurlin wanted from the Board of Selectmen. Hurlin responded that Nathalie Cook (present owner of property) would like the Board of Health and its agents to listen to what she has to say. He said they keep telling him to get out of the office when he wants to discuss items in detail. Merry told him that if he has a problem with the Board of Health Agent then he needs to talk to the Board of Health. Hurlin stated that the Board of Health Chairman, Charles Costello, also works for the DEP. He said that because Costello works for the DEP then the residents of Rowley have no one to turn to. He said that they (the Board of Health) do not want to discuss the issues. He said that Costello should not be on the Board of Health. Merry told him that he couldn't dismiss the Appointment of Mr. Costello without just cause. Hurlin stated that there was an issue tonight with a licensee and he saw how the Board of Selectmen acted to help the applicant. He said that the Board of Selectmen need to have their agents act the same way to everyone else in the town. Merry said that the difference is that the Board of Selectmen does not issue anything to do with septic systems or sanitary codes, but the board does issue a license to store fuel which is what the applicant had. Robert Madden stated to Hurlin that he was in here tonight to complain about the Board of Health because he didn't get what he considered to be reasonable treatment. Madden stated that the property is now in the name of Nathalie Cook and

JANUARY 8, 2001                                                                    4

not in Nick Hurlin's. He said that because of this point Nathalie is the agent for the property. Hurlin stated that he is the agent; Madden stated that he has nothing telling him that. Madden stated that Hurlin doesn't even like what the DEP is telling him and they are the agency that overrides the Board of Health. Madden said "there are a couple of things that I as a Selectmen will not put up with, you can complain about any town official that you want to, but let me tell you something, the next time that I ever hear that you have threaten a town employee..." Hurlin stated that he didn't threaten a town employee. Madden stated that he got a call from a "very disturbed Mr. Costello". Hurlin stated that Costello took him out of context. Madden said "the next time that you ever do that, you will be barred from town property!" Hurlin said that he is trying to prevent in the future from having another Colbrook, NH or Wakefield from happening. Madden asked Hurlin if he was threatening him. Hurlin said that it was not a threat. He said that he was trying to prevent such a thing from happening. Madden asked him who he was preventing it from. Hurlin said "from somebody who wasn't like myself, who didn't have my..." Madden said "who causes turmoil everytime he walks into the office". Hurlin stated that he does not cause turmoil. Merry stated that is exactly what is happening right now. Merry said "Nick, if I could give you some friendly advice, you don't go around talking about Wakefields or you don't go around talking about Colbrook, NH to public employees because that is a threat. Merry stated that if it wasn't a threat then why did he bring it up. He said he brought it up because he wants everyone to face reality. Merry stated that you don't bring up those subjects when you are dealing with public employees. Hurlin stated that it was not intended to be a threat. Merry stated that the discussion has ended.

Merry stated that takes care of our general session we would like to enter Executive Session for the purpose of discussing employee contracts, union negotiation, land purchase and lawsuits.

Robert Madden moved to enter into Executive Session, second G. Robert Merry. Roll call vote Robert Madden - aye, G. Robert Merry - aye. Attilio Paglia absent. Merry stated that we will not reconvene into general session

General session adjourned at 8:30 p.m.

Respectfully submitted:

Beth Liffers
Executive Secretary

Volume:     I
Pages:      33

```
*  *  *  *  *  *  *  *  *  *  *  *  *
                                    *
MEETING OF THE                      *
                                    *
BOARD OF SELECTMEN                  *
                                    *
ROWLEY, MASSACHUSETTS               *
                                    *
JANUARY 8, 2001                     *
                                    *
*  *  *  *  *  *  *  *  *  *  *  *  *
```

**DUNN & GOUDREAU**
**COURT REPORTING SERVICE, INC.**
One State Street, Suite 1150
Boston, Massachusetts  02109
Telephone (617) 742-6900

2

1    **MEETING OF THE BOARD OF SELECTMEN**

2    **ROWLEY, MASSACHUSETTS**

3    **January 8, 2001**

4

5    MR. GAMACHE:  My name is Inspector

6    Gamache, Rowley Police Department.  I am

7    recording from a tape of the Selectmen's meeting

8    which was held on the evening of January 8th, the

9    year 2001.

10

11    SELECTMEN'S MEETING

12    BOARD MEMBER:  - wraps up our general

13    open- meeting agenda.  Is there something that

14    you would like to discuss at this point?  You're

15    not on the agenda, but . . .

16    UNIDENTIFIED:  Absolutely.

17    BOARD MEMBER:  Okay.

18    UNIDENTIFIED:  What I have to discuss

19    (inaudible) the general public (inaudible) would

20    require a closed session.

21    BOARD MEMBER:  Okay.  I can't put you

22    on a closed session.

23    UNIDENTIFIED:  Okay.

24    BOARD MEMBER:  (inaudible) and I'd have

1    to know when – you'd have to submit something to

2    me in writing on the closed session so that I

3    could qualify it to make sure it was a legitimate

4    executive session.

5              UNIDENTIFIED:  It's about

6    personalities, so . . .

7              BOARD MEMBER:  Well, I mean, that is –

8    that may not be legitimate.

9              BOARD MEMBER:  Yours?

10             UNIDENTIFIED:  Well, I've got the worst

11   personality of anybody in the world.  Everybody

12   hates me, so (inaudible).

13             BOARD MEMBER:  I mean, I need – I'd

14   certainly need that in writing.

15             UNIDENTIFIED:  Okay.

16             BOARD MEMBER:  Because if it's dealing

17   with a town employee, then the town employee has

18   the authority to either have it in open session

19   or executive session (inaudible) –

20             UNIDENTIFIED:  Well, I don't mind doing

21   it in open session –

22             BOARD MEMBER:  It's not my call.

23             UNIDENTIFIED:  – I was just trying to

24   be considerate.

DUNN & GOUDREAU COURT REPORTING SERVICE, INC.

4

1          BOARD MEMBER:  Yeah, it's not my call,

2     it's their call, okay?

3          UNIDENTIFIED:  Well, you can ask them

4     what they'd like to do.

5          BOARD MEMBER:  But I need that – I'm

6     going to need that in writing.

7          UNIDENTIFIED:  Okay.

8          BOARD MEMBER:  (inaudible) executive

9     session.

10          UNIDENTIFIED:  Okay.

11          BOARD MEMBER:  (inaudible) got

12     something you want to bring up in open session.

13          UNIDENTIFIED:  The open session,

14     absolutely.  (inaudible) –

15          BOARD MEMBER:  Well, yeah, (inaudible).

16          UNIDENTIFIED:  Okay.  (inaudible).

17     This goes back quite a while, back to the '80s

18     when there was a meeting at the – selectmen's

19     meeting at the town hall – at the Baptist Church,

20     because this room wasn't large enough at the

21     time.  At that time, during a recess of the

22     selectmen's meeting, the selectmen tried to

23     conspire to go and have my apartment (inaudible).

24          BOARD MEMBER:  Well, I think right at –

5

1      UNIDENTIFIED:  I'm just -

2      BOARD MEMBER:  - this point, Nick, I

3  mean, I think right now (inaudible) lawsuit here

4  with this particular -

5      UNIDENTIFIED:  Well, I just wanted to -

6      BOARD MEMBER:  Well -

7      UNIDENTIFIED:  - give you a quick

8  background so I can bring you up to date what's

9  going on.

10      BOARD MEMBER:  Well, I mean, if you're

11  going to start making accusations like that, I

12  mean, there's no -

13      UNIDENTIFIED:  This -

14      BOARD MEMBER:  I haven't any

15  information at all about that meeting that you're

16  talking about or any -

17      UNIDENTIFIED:  I (inaudible) -

18      BOARD MEMBER:  - conspiracy that you're

19  taking about.

20      UNIDENTIFIED:  I have it.

21      BOARD MEMBER:  At this point, I can't

22  allow you to go forward.

23      UNIDENTIFIED:  Okay, all right, I won't

24  go forward with that, but I have -

6

1      BOARD MEMBER:  Okay.

2      UNIDENTIFIED:  I wouldn't say that

3  unless -

4      BOARD MEMBER:  If we're going to get

5  into the property on Central Street and we are

6  involved in litigation with you on that

7  property -

8      UNIDENTIFIED:  Yes.

9      BOARD MEMBER:  - I'm not going to allow

10  that either.

11      UNIDENTIFIED:  Well, this has to do

12  with (inaudible) present situation, it has to do

13  with my going down (inaudible) trying to explain

14  a letter that we got from Madeline Norris of the

15  DEP, which I sent you a copy, and I brought down

16  - the Board of Health had asked me to get

17  hydrological information on it, and I brought

18  that down.  And much to my surprise and I think

19  everybody's surprise, the permeability of that

20  material, the detail of the data that Winfred

21  (phonetic) Company came up with, came out to be a

22  wonderful perk.  I was never so surprised in my

23  life.  Okay?  So the permeability was proven by

24  that data.

7

1    BOARD MEMBER:  Okay.  At this point,

2    we're not even the ones that are going to be able

3    to analyze that data (inaudible).

4    UNIDENTIFIED:  Well -

5    BOARD MEMBER:  We don't have the

6    expertise.  If you sent some data to the DEP,

7    they're the ones you're going to have to deal

8    with.

9    UNIDENTIFIED:  I understand.  So I went

10    - I've talked to them about that (inaudible).  In

11    fact, Mr. - I had a chat with Mr. Ferris, which

12    went round and round and came back to square one,

13    which came - put us back into 1989 and 1990 and

14    1991 (inaudible) nothing's happened and there's

15    been no progress over the past nine years.

16    BOARD MEMBER:  Okay.  If I -

17    UNIDENTIFIED:  And it's been in

18    litigation now (inaudible) -

19    BOARD MEMBER:  If I could interrupt you

20    just one more time.

21    UNIDENTIFIED:  Sure.

22    BOARD MEMBER:  What do you want from

23    us?

24    UNIDENTIFIED:  Well, I would like

1    (inaudible) the Board of Health and their agents

2    to listen to what she has to say instead of

3    telling me to get out of the office when it comes

4    down to talking about the detail of my – of the

5    plan that she's admitted.  They keep –

6    specifically, they keep telling us that we have

7    no right to make a plan.  They say that I have to

8    be an engineer, that I have to be a sanitarian.

9    "You're not an engineer, we don't want to talk to

10    you about it."  And that's a violation of their –

11    it's a violation of Title 5, it's a violation of

12    Chapter 112 –

13         BOARD MEMBER:  And again, I'm not

14    familiar with Title 5, I'm not familiar with

15    Chapter 112, so I cannot talk to that.

16         UNIDENTIFIED:  Well, I can show you,

17    and it's very clear, it's very clear.

18         BOARD MEMBER:  And again, sir, I have

19    to recommend to you, and it's probably been

20    recommended before, that if you have a problem

21    with the Board of Health agent, that you need to

22    talk to the Board of Health.

23         UNIDENTIFIED:  I've talked to

24    Mr. Costello.  Now I find out Mr. Costello serves

DUNN & GOUDREAU COURT REPORTING SERVICE, INC.

9

1    as another master besides the Town of Rowley; he

2    serves the DEP as a consultant, which leads me to

3    believe that the citizens here in Rowley have

4    nobody to fight for them against the DEP.  Their

5    only recourse is to the courts.  And when their

6    only recourse is to the courts and it takes ten

7    years to get justice, then there is no justice.

8         BOARD MEMBER:  Well, there again, I,

9    you know, I can't speak for the court, but I -

10        UNIDENTIFIED:  Well, you can speak for

11   Mr. - for - you're the ones that appoint the

12   people who are on the Board of Health.  Now, I'm

13   going to just point out to you, I've now been a

14   member of the Massachusetts Boards of Health for

15   four years.  I go down and I attend their

16   seminars and I take their updating, educational.

17   And much of it is with Title 5, much of it is

18   with improved service and all of the other

19   aspects of the Board of Health.  Okay?  There's a

20   certain protocol that's recommended, and I

21   understand that they have the same book that we

22   do, that Mass. Boards uses as a guidance in

23   running the Board of Health.  The DEP helped

24   (inaudible) that.  And we have a situation where

**DUNN & GOUDREAU COURT REPORTING SERVICE, INC.**

1    that the Board is not following the directions,

2    they're not following their own - it's my opinion

3    that they're not following -

4              BOARD MEMBER:  Well, and again, if

5    that's - I understand it's your opinion, but I'm

6    not familiar with that.  I cannot address that.

7    I just don't know whether they're following it or

8    not.  I mean, you're making an accusation -

9              UNIDENTIFIED:  Well, I'll be glad to

10    show it to you -

11              BOARD MEMBER:  In my lifespan, I have

12    learned that there are always two sides to every

13    story.

14              UNIDENTIFIED:  I understand.

15              BOARD MEMBER:  Okay?  And I think you

16    (inaudible) -

17              UNIDENTIFIED:  I understand.

18              BOARD MEMBER:  - too, so, I mean, I

19    just don't know.

20              UNIDENTIFIED:  But the law says that I

21    have a right to design, just like you have a

22    right to design your own system.  It must be

23    reviewed by a sanitarian.  Okay?  When I go down

24    to try and discuss it, they don't want to discuss

1    the issues.  I can show them where they can use

2    the law to help remedy a situation that's been

3    going on for twelve years.

4        BOARD MEMBER:  Well, I - the only thing

5    I can recommend to you is just to get on an

6    agenda (inaudible) meeting and discuss that with

7    them.  I mean, if you're having trouble talking

8    to -

9        UNIDENTIFIED:  Well, I'm having trouble

10   with Mr. Costello.  He tried to paint me - he

11   tried to impeach my integrity at the last

12   meeting, so why would I go down there every time?

13       BOARD MEMBER:  Well, because you have

14   to.

15       UNIDENTIFIED:  I go down there to be -

16       BOARD MEMBER:  I mean, I can't give it

17   to you, I can't deal with it.  It's not my -

18       UNIDENTIFIED:  Well, you can appoint

19   people that will serve -

20       BOARD MEMBER:  Well, that's -

21       UNIDENTIFIED:  - the public and serve

22   the citizens.

23       BOARD MEMBER:  That's not going to

24   happen right away.

DUNN & GOUDREAU COURT REPORTING SERVICE, INC.

12

1    UNIDENTIFIED:  Well -

2    BOARD MEMBER:  Okay?  It's not

3    appointment time at this point.  And I can't

4    dismiss him without just cause.  And at this

5    point -

6    UNIDENTIFIED:  I think trying to

7    impeach a citizen -

8    BOARD MEMBER:  At this point, I don't

9    have (inaudible), I just have your explanation,

10    that's all I have.

11    UNIDENTIFIED:  Well, I'm going to tell

12    you what happened, if I may.

13    BOARD MEMBER:  Well, there again, I'm

14    only going to have your side of the story.

15    UNIDENTIFIED:  You can -

16    BOARD MEMBER:  And I can't sit here and

17    tell you that I'm going to dismiss him because of

18    your side of the story.

19    UNIDENTIFIED:  I'm not asking - well,

20    I'd just like you to hear my story.  I'd like to

21    be able to make it public.  (inaudible) -

22    BOARD MEMBER:  Well, there again, I

23    mean, there's nothing I can do for you, I don't

24    think any board of selectman can do for you.

**DUNN & GOUDREAU COURT REPORTING SERVICE, INC.**

13

1    UNIDENTIFIED:  Well, you know, you

2    create something so that you end up, if you don't

3    do things like that, you put citizens in a

4    position (inaudible) - you put people in a box

5    where they have nowhere to turn.  If you turn to

6    the courts, you can't wait ten years for justice.

7    BOARD MEMBER:  Well, I can't control

8    the -

9    UNIDENTIFIED:  I remember one time even

10   you offered to help me with an affidavit, sir,

11   and when you (inaudible) and I can understand

12   your saying that you couldn't help me at that

13   time, but you were going to -

14   BOARD MEMBER:  Well, I think if you

15   want to get the story correct, you asked me to

16   supply you -

17   UNIDENTIFIED:  I asked you, and you -

18   BOARD MEMBER:  - with an affidavit

19   dealing with the electrical services at that

20   property -

21   UNIDENTIFIED:  Yes, and you did - and

22   you -

23   BOARD MEMBER:  Okay.

24   UNIDENTIFIED:  - agreed to for a while,

14

1    you said, "I'm going to help you with that."

2        BOARD MEMBER:  But then I checked with

3    town counsel and realized at that point that

4    there was a lawsuit against the town.

5        UNIDENTIFIED:  And I understand that.

6        BOARD MEMBER:  Okay?  So then -

7        UNIDENTIFIED:  But -

8        BOARD MEMBER:  - therefore, I had to

9    renege on what I had told you (inaudible) -

10        UNIDENTIFIED:  I understand that, but

11    because there's a lawsuit against the town, I

12    don't know why you had to renege on testifying on

13    or giving me what you -

14        BOARD MEMBER:  Because I was an agent

15    of the town at that - I mean, let's, you

16    know . . .

17        UNIDENTIFIED:  Well, I under - I can

18    understand that, but I'm also a neighbor of

19    yours, and you're a neighbor of mine.  That

20    building has been sitting there for twelve years,

21    sir.  Twelve years.  And -

22        BOARD MEMBER:  There again, you keep

23    referring to the court -

24        UNIDENTIFIED:  And I just -

15

1    BOARD MEMBER:  - and I can't control

2    the court.

3    UNIDENTIFIED:  I understand, but we

4    just have an issue right here where you - just,

5    identical issues right here just sat up.  You've

6    got an issue where you've got something that was

7    out of license here for how many years?  Since

8    '79?  And I saw how you acted in resolving this

9    problem.  And you need to do that, have your -

10   you need to have your agents on the other boards

11   that are in town act the same way -

12   BOARD MEMBER:  Okay.

13   UNIDENTIFIED:  - wanting to help the

14   people in the town.

15   BOARD MEMBER:  There is a very distinct

16   difference here.

17   UNIDENTIFIED:  No, there isn't.

18   BOARD MEMBER:  No - yes, there is.

19   UNIDENTIFIED:  What's the difference?

20   BOARD MEMBER:  I do not approve septic

21   system plans, I do not do inspections on septic

22   system, I do not handle the sanitary codes of the

23   Town of Rowley.  I issue a license to store fuel.

24   That's what I do.  Okay?  And that's the

16

1   difference between what this gentleman had and

2   what you have.

3            UNIDENTIFIED:  Well -

4            BOARD MEMBER:  And we do that based on

5   compliance.

6            UNIDENTIFIED:  I understand, based on

7   compliance.

8            BOARD MEMBER:  Okay?  You also heard,

9   even though there was an out-of-license

10  situation, that the fire chief said everything is

11  in compliance.

12           UNIDENTIFIED:  That's what (inaudible)

13  said.

14           BOARD MEMBER:  Okay?  That is not the

15  case with your property.

16           UNIDENTIFIED:  That's not true.

17           BOARD MEMBER:  I'm just telling you

18  what -

19           UNIDENTIFIED:  (inaudible) I know that

20  it -

21           BOARD MEMBER:  So -

22           UNIDENTIFIED:  (inaudible) -

23           BOARD MEMBER:  (inaudible) wait a

24  minute, wait a minute.

**DUNN & GOUDREAU COURT REPORTING SERVICE, INC.**

17

1    UNIDENTIFIED:  Yeah.

2    BOARD MEMBER:  You're in here to

3    complain about the Board of Health because you

4    did not get what you consider to be reasonable

5    treatment, I guess.

6    UNIDENTIFIED:  Not this morning -

7    BOARD MEMBER:  Okay?

8    UNIDENTIFIED:  - I didn't, and I

9    haven't for a long time.

10    BOARD MEMBER:  (inaudible).  A number

11    of years ago, a situation was - how can I put it?

12    - elevated to the point where your building on

13    Central Street was essentially condemned.  You -

14    UNIDENTIFIED:  Illegally condemned, by

15    the way.  Illegally condemned.

16    BOARD MEMBER:  That's your opinion.  It

17    was condemned, period.

18    UNIDENTIFIED:  It was illegally

19    condemned.

20    BOARD MEMBER:  Okay?  Through

21    litigation, for the last ten, eleven, twelve

22    years or whatever that number is, all right, you

23    have sued the town to try and get back whatever

24    it is that you feel you lost on that property.

18

1    Now, once you do that, all right, you

2    become . . .

3              BOARD MEMBER:  An adversary.

4              BOARD MEMBER:  Adversarial.  All right?

5    No question about it.  The town has to be very

6    careful in how they deal with you.  Okay?  During

7    the course of that time, all right, you not only

8    have not maintained ownership of the building,

9    you've transferred that ownership to somebody

10   else.

11             UNIDENTIFIED:  Exactly.

12             BOARD MEMBER:  All right?  So

13   therefore, unless you have a letter in your hand

14   saying that you are the agent for that person, I

15   wouldn't talk to you if I was over there.

16             UNIDENTIFIED:  Well, that's your

17   choice.

18             BOARD MEMBER:  Okay?

19             UNIDENTIFIED:  I have (inaudible) -

20             BOARD MEMBER:  Because I don't know who

21   I'm talking to.  I want to know that if I'm

22   talking to somebody, that that person has the

23   legal authority to talk to me about it.  Okay?

24   And to my knowledge, no such letter exists.

**DUNN & GOUDREAU COURT REPORTING SERVICE, INC.**

1    UNIDENTIFIED:  Well -

2    BOARD MEMBER:  Miss Cook owns the

3    property, she is -

4    UNIDENTIFIED:  (inaudible) Cook owns

5    the property?

6    BOARD MEMBER:  And she is the agent for

7    the property.

8    UNIDENTIFIED:  No, I'm her agent.  And

9    you're -

10   BOARD MEMBER:  I have not seen a letter

11   to that effect.

12   UNIDENTIFIED:  Well, I'll be glad to

13   supply that.

14   BOARD MEMBER:  Okay?  But -

15   UNIDENTIFIED:  (inaudible) -

16   BOARD MEMBER:  - neither here nor

17   there, the DEP, all right, got involved in this

18   particular issue by mutual consent from you or

19   the landowner, okay, and the Board of Health.

20   This has been going on for a number of years.

21   Okay?  You don't take the DEP's word for it, you

22   don't take the Board of Health's word for it.

23   UNIDENTIFIED:  Word for what?  Which

24   word -

1                    BOARD MEMBER:  Whatever -

2                    UNIDENTIFIED:  - (inaudible) word we're

3  talking about.

4                    BOARD MEMBER:  Whatever they come down

5  with, you argue with the other side.  All right?

6                    UNIDENTIFIED:  I'm only arguing fact -

7                    BOARD MEMBER:  You're sitting here

8  saying that you don't even like what the DEP has

9  done to you.

10                  UNIDENTIFIED: Exactly.  First of all,

11  (inaudible) take sides -

12                  BOARD MEMBER:  They're the last word.

13                  UNIDENTIFIED:  - (inaudible) taking

14  sides.

15                  BOARD MEMBER:  They're the last word.

16                  UNIDENTIFIED:  Mr. Ferris -

17                  BOARD MEMBER:  They are the last word.

18  They override the Board of Health.

19                  UNIDENTIFIED:  No, they don't.

20                  BOARD MEMBER:  Yes, they do.

21                  UNIDENTIFIED:  I just had a big

22  argument with Mr. Ferris, and he's arguing the

23  opposite of what you're saying.  Mr. Ferris says,

24  "It's the Town of Rowley, nothing to do with us.

1   We're only guidance.  It's not us." That's what

2   he's saying to me.

3          BOARD MEMBER:  If you've appealed to

4   the Board - the Department of Public - DEP, then

5   you have asked for their override of the Board of

6   Health.

7          UNIDENTIFIED:  I didn't appeal to them.

8   They wrote me a letter saying, "We're going to -

9   this is what it's going to be.  You can have a

10  tight tank or nothing."  And I'll be glad to put

11  in a modified tight tank.  I've proved to you

12  that we have permeability far beyond what I ever

13  dreamed was down there.  The town tried to keep

14  from me the reports on the Bagley property,

15  Begley (phonetic) property right next-door for

16  four or five years, which I've tried to obtain

17  through the Freedom of Information Act and

18  everything else.  And I went for years - I just

19  found out this year.  Finally, the courts or the

20  lawyers ordered them to show me that stuff.

21          And when I go through that stuff, I

22  find out Mr. Begley's property perked, with a

23  ten-minute perk, they kept that information from

24  me now for four years, and that there was - when

22

1    you were asked to put a communal system in here

2    for the - at the school, that Mr. Fletcher was

3    down here and that Rosemary Marcellis was down

4    here and they did soil-sample tests all the way

5    around.  They did all the properties around

6    except for 27 Central Street.  As near as

7    (inaudible) -

8          BOARD MEMBER:  And why do you think

9    that would be?

10          UNIDENTIFIED:  I wonder why.

11          BOARD MEMBER:  Because you're

12    litigating against the town.  I wouldn't step

13    foot on your property (inaudible) -

14          UNIDENTIFIED:  (inaudible) no

15    litigation against you, and this is (inaudible) -

16          BOARD MEMBER:  Nick, Nick, Nick -

17          UNIDENTIFIED:  You can't cross the two.

18          BOARD MEMBER:  Lookit, there's a couple

19    of things that I, as a selectman, will not put up

20    with.  All right?  You can complain about any

21    town official that you want to.  Okay?  But let

22    me tell you something.  The next time that I ever

23    hear that you have threatened a town employee -

24          UNIDENTIFIED:  I've never threatened a

1    town employee, ever.

2                    BOARD MEMBER:  I got a call this

3    evening from a very disturbed Mr. Costello, all

4    right -

5                    UNIDENTIFIED:  Well, he took me out of

6    context, and I told him (inaudible) -

7                    BOARD MEMBER:  I don't care out of

8    context (inaudible) -

9                    UNIDENTIFIED:  I'm going to tell you

10   exactly what I said -

11                   BOARD MEMBER:  The next time you ever

12   do that, you will be barred from town property.

13                   UNIDENTIFIED:  You're trying to -

14   you're trying to -

15                   BOARD MEMBER:  Okay?

16                   UNIDENTIFIED:  - re-impeach my

17   integrity again.

18                   BOARD MEMBER:  And I'll do it over and

19   over again -

20                   UNIDENTIFIED:  Well, I'm going to tell

21   everybody -

22                   BOARD MEMBER:  If you're going to say

23   stuff like that, you're going to -

24                   UNIDENTIFIED:  Let's just get it out in

24

1      the open (inaudible) -

2                  BOARD MEMBER:  - you're going to get

3      thrown out.

4                  UNIDENTIFIED:  I told her today the

5      same thing.  Something very similar to that.  I

6      just said I am trying to prevent, in the future,

7      for my grandchildren or your grandchildren or

8      anybody in town from having another Colebrook,

9      New Hampshire or is it Wakefield or whatever it

10     was, because that's what - if it - if you have

11     (inaudible) -

12                 BOARD MEMBER:  Are you threatening me?

13                 UNIDENTIFIED:  No, that's not a threat,

14     (inaudible) -

15                 BOARD MEMBER:  It certainly is.

16                 UNIDENTIFIED:  You take it any way out

17     - you're - my lips just said that's not a threat

18     (inaudible) -

19                 BOARD MEMBER:  No sane person would say

20     that.

21                 UNIDENTIFIED:  This is a very serious

22     matter, sir.  This is a -

23                 BOARD MEMBER:  No sane person -

24                 UNIDENTIFIED:  - very serious matter.

**DUNN & GOUDREAU COURT REPORTING SERVICE, INC.**

25

1       BOARD MEMBER:  - would say that.

2       UNIDENTIFIED:  Well, then, if you think

3   I'm insane, I'm not insane, sir.  It's been - I'm

4   trying to point out that Mr. - I'm trying to

5   prevent such a thing, and if you would -

6       BOARD MEMBER:  From who?

7       UNIDENTIFIED:  From somebody who wasn't

8   like myself, who didn't have my -

9       BOARD MEMBER:  Who causes turmoil every

10  time you walk into an office?

11      UNIDENTIFIED:  I don't cause turmoil

12  every -

13      BOARD MEMBER:  You most certainly do.

14      BOARD MEMBER:  I think that's what we

15  have right now, to be perfectly honest with you.

16      UNIDENTIFIED:  Well, sir, you're the

17  one that made the accusation of that -

18      BOARD MEMBER:  No, I did not -

19      BOARD MEMBER:  If I could give you some

20  friendly advice, you don't go around talking

21  about Wakefield, sir, you don't go around talking

22  about Colebrook, New Hampshire to public

23  employees.

24      UNIDENTIFIED:  That (inaudible) -

DUNN & GOUDREAU COURT REPORTING SERVICE, INC.

26

1    BOARD MEMBER:  Okay?  (inaudible) -

2    BOARD MEMBER:  - no matter how you

3    slice it, that's a threat.

4    BOARD MEMBER:  That's a threat, Nick.

5    Whether you think it's not -

6    BOARD MEMBER:  And that's exactly how

7    it was taken.

8    UNIDENTIFIED:  I - we had a talk about

9    - he took it out and he started yelling at - he

10    took it out of context, and I preliminaried that

11    (inaudible) this is not a threat, I just want to

12    keep this from ever happening.  And we have had a

13    long shoving match over the phone -

14    BOARD MEMBER:  Nick, if it's not a

15    threat, why would you even bring it up?

16    UNIDENTIFIED:  Because I don't want it

17    to ever happen, and I want you to face reality;

18    it could happen.  What happens if I was a

19    lunatic?  Really a lunatic?

20    BOARD MEMBER:  Well -

21    UNIDENTIFIED:  Maybe you think I am a

22    lunatic, but - fine, I am a lunatic, I'm a bad

23    guy and whatever the - I'm a hateful guy and you

24    don't like me.  I don't care.  I don't want this

DUNN & GOUDREAU COURT REPORTING SERVICE, INC.

27

1    to happen -

2              BOARD MEMBER:  (inaudible) -

3              UNIDENTIFIED:  - because it could

4    happen -

5              BOARD MEMBER:  Nick, let me

6    (inaudible) -

7              UNIDENTIFIED:  It could happen -

8              BOARD MEMBER:  - words.  Those are your

9    words, those are not my words -

10             UNIDENTIFIED:  It's happened, and I'm

11   just trying to -

12             BOARD MEMBER:  Okay?

13             UNIDENTIFIED:  They are my words -

14             BOARD MEMBER:  I'll give you some

15   friendly advice.  You don't bring up those

16   subjects when you're dealing with public

17   employees.  Okay?  You don't walk into somebody's

18   office and say, "This could be a Wakefield" -

19             UNIDENTIFIED:  That's not what

20   happened -

21             BOARD MEMBER:  Okay?

22             UNIDENTIFIED:  - that's not what -

23             BOARD MEMBER:  Because you don't - you

24   don't say those things, Nick, you just don't say

28

1    those things.

2              UNIDENTIFIED:  I'm trying to prevent

3    it.

4              BOARD MEMBER:  How?  How are you going

5    to prevent it?

6              UNIDENTIFIED:  Because I'm trying to

7    point out to you that you can't take somebody's -

8    for twelve years -

9              BOARD MEMBER:  You're the only one

10   that's come in here and said it.  Nobody else

11   has come in here and said it.  You're the only

12   one.

13             UNIDENTIFIED:  Well, I think

14   (inaudible) -

15             BOARD MEMBER:  So you're going to be

16   our savior?

17             UNIDENTIFIED:  I'm not trying to -

18             BOARD MEMBER:  How do you think - how -

19             UNIDENTIFIED:  - be anybody's savior,

20   sir.

21             BOARD MEMBER:  How do you think these

22   people are going to take that?  They're going to

23   take it as a threat.

24             UNIDENTIFIED:  It's not a threat.  It

DUNN & GOUDREAU COURT REPORTING SERVICE, INC.

29

1    was not intended to be a threat.

2                 BOARD MEMBER:  That's your opinion.

3    That's not their opinion.

4                 UNIDENTIFIED:  (inaudible) -

5                 BOARD MEMBER:  When you walk in to a

6    secretary who's sitting behind a desk and you say

7    - and mention Wakefield two weeks after seven

8    people got shot and killed, what do you expect

9    them to think?

10                UNIDENTIFIED:  I expect -

11                BOARD MEMBER:  What do you expect them

12   to think?

13                UNIDENTIFIED:  I expect that you'll

14   take somebody's problems seriously and not go

15   (inaudible) off, that's what I expect.  I expect

16   you to hold and do your job and work for the

17   citizens of this country and this town.  And

18   there's been other people in this town that you

19   haven't don't that for, not you, even you, I

20   asked you help - when you were working on the

21   schoolhouse, I came down, you were working on the

22   (inaudible), you said you were going to help and

23   look into me - look into it.  When I came

24   (inaudible) -

**DUNN & GOUDREAU COURT REPORTING SERVICE, INC.**

30

1    BOARD MEMBER:  I did not.  I did not.

2    UNIDENTIFIED:  (inaudible) wait a

3  minute -

4    BOARD MEMBER:  I'll correct you right

5  now -

6    UNIDENTIFIED:  I'll correct you, that's

7  what (inaudible) -

8    BOARD MEMBER:  I told you that I would

9  not -

10    UNIDENTIFIED:  Well -

11    BOARD MEMBER:  - touch it as long as

12  you were litigating against the town.

13    UNIDENTIFIED:  That's what you told me

14  the second time around.

15    BOARD MEMBER:  That's what I told you

16  then.

17    UNIDENTIFIED:  We had three -

18    BOARD MEMBER:  (inaudible) -

19    UNIDENTIFIED:  We had three

20  conversations on it, sir -

21    BOARD MEMBER:  (inaudible) board member

22  said he would look into it.

23    UNIDENTIFIED:  We had - you and I had

24  three conversations on it, sir, and I

**DUNN & GOUDREAU COURT REPORTING SERVICE, INC.**

31

```
1            (inaudible) -

2                    BOARD MEMBER:  We had one

3       conversation.

4                    UNIDENTIFIED:  Three conversations.

5                    BOARD MEMBER:  One.

6                    UNIDENTIFIED:  Three.

7                    BOARD MEMBER:  One.

8                    BOARD MEMBER:  Okay, I think -

9                    UNIDENTIFIED:  Three.  I can document

10      them.

11                   BOARD MEMBER:  I think at this point,

12      we should end this discussion.

13                   UNIDENTIFIED:  Okay.

14                   BOARD MEMBER:  Because we're not

15      getting anywhere.

16                   UNIDENTIFIED:  Okay.

17                   BOARD MEMBER:  Okay?

18                   UNIDENTIFIED:  I'm just saying you

19      need to help the citizens resolve their problems,

20      sir.

21                   BOARD MEMBER:  Thank you.

22                   UNIDENTIFIED:  You're welcome.

23                   BOARD MEMBER:  Is that going to be

24      front page, Jason?
```

32

1          UNIDENTIFIED:  I don't know about front

2     page.

3

4               * * * END OF RECORDING * * *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

33

# C E R T I F I C A T E

This is to certify the foregoing is a true and accurate transcript, to the best of my skill and ability, of the Rowley Board of Selectmen meeting held on January 8, 2001.

_Lisa M. Cimmino_
Lisa M. Cimmino
Notary Public

_10·24·04_
Date

LISA M. CIMMINO
Notary Public
Commonwealth of Massachusetts
My Commission Expires
January 28, 2005

**DUNN & GOUDREAU COURT REPORTING SERVICE, INC.**