# EXHIBIT 7



# Town of Rowley
### Massachusetts 01969
### 39 Central Street
### P. O. Box 783
E-Mail   Health@Rowley-ma.com

**Board of Health**

(978) 948 2231
FAX   (978) 948 7196

Board of Health Meeting
January 8, 2001
7:30 PM
Center School

Members Present

Charles Costello, Chairman
Peter Barbaro
Timothy Toomey
John Melcher

Alyssa Rusiecki, Health Agent

Unanimous Vote to Accept the Motion to open the Meeting of the Board of Health for the Town of Rowley this Eighth Day of January, in the year 2001.

## Item 1:   Minutes
Motion to accept the minutes of December 18, 2000. Seconded. The Board voted unanimously to accept the motion.

## Item 2:  Comprehensive Permit for Hunsley Hills
Mr. Mike Carter of GCG Associates, engineer for the owners comes to present the initial plan for the Comprehensive Permit for the sub-division entitled The Village at Hunsley Hills. The engineer said that the permit is for 11 buildings containing a total of 44 2-bedroom units, affordable housing is to make up 25 percent of the total units, the Conservation Commission delineation approval is good until December 2002 and the local regulations are not required to be followed due to the "comprehensive status of the permit". The Board of Health needs to review soils information, the files available being limited. The Zoning Board of Appeals hearing is being held on January 11, 2001. Mr. Carter states that the Zoning Board must distribute the copies of the plans. The Board will request an extension and a copy of the plans entitled "The Village at Hunsley Hills . . ." Mr. Marty Sarkisian, real estate agent working with the owner stated the plans were delivered to the Rowley Housing Authority on December 13, 2000.

## Item 3:  Country Gourmet; operator:  Karen Cappas; owner: Maria Lantzakis

In April, 2001, Ms. Cappas came to the Board of Health for review of the property file and was informed at that time that an upgrade to the system needed to occur. The issue was addressed by the Board at a previous Board of Health meeting on October 10, 2000, during which the building permit being issued without a Board of Health review and sign off occurring. The situation was discussed with the Building Inspector, Ken Ward, and the applicant, that a change of use would require a septic system upgrade. A file review of the existing system shows that no grease trap is present as required by Title 5. No pumping records are available. The Board of Health letter sent on October 12, 2000, to the applicant was read into the record. The temporary permit for a Food Establishment was issued, conditionally, only if a grease trap was installed by January 1, 2001. The applicant is now before the Board to request an extension on the time allowed to install the grease trap. Ms. Cappas stated that it was her understanding at the time of purchase of the business that a grease trap was present. The property owner, Ms. Lantzakis, was away for two months and were not available arrange the installation. Ms. Lantzakis stated she inquired of an installer, and he said he was not able to install because the ground was frozen. The Board of Health Members discussed, with the applicants, the advantage of having a grease trap and the possibility of potential septic system failure without a grease trap. The Chairman suggested April 1, 2001, as an extension date to be granted with the understanding that the grease trap will be installed by April 1, 2001 or then the restaurant will be closed on April 2, 2001. The Board believes this to be a generous extension time frame. Both Ms. Cappas and Ms. Lantzakis understood and agreed with this decision of the Board of Health.

Motion to grant an extension to April 1, 2001 with the understanding of the parties that installation is to be completed by the deadline. Seconded. The Board voted unanimously to accept the motion.

## Item 4:  Agent's Report

The installer's renewal exam was completed on December 19, 2000. The 15 out of 19 installer's able to renew were given a group test of sample stone and sand materials. 14 out of 15 passed. The full exam for installer's wishing to be licensed in 2001 has been revised. One test day has occurred on January 4, 2001. The next scheduled day is January 24. Additionally, the Board of Health will set two additional dates in June to be announced at a later time. This schedule was set through discussion with the Board to avoid the missed appointments and wasted time experienced by the Board of Health staff during last year's exam scheduling

Town Clerk inquiring on the appointment deadline information on the members. The Board Members will check their cards and the Town Clerk needs to assist reviewing terms and previous records. Mr. Barbaro would like a replacement card if possible.

A "Fred Pryor" customer service seminar will be given. The Agent suggests the Board of Health office staff attend this seminar. The Board likes the idea, and if the budget allows, the members would approve of this seminar.

Some handout articles for the Board concerning a letter written to Health Commissioner Koh, by a group of Sanitarians, regarding the additional hardships the newly adopted regulations put on the health agents in the State. An article regarding a

septage hauler infractions and illegal dumping working in and around the area was distributed for informational purposes.

## Item 5: Draft Handouts for Board of Health Review

The package for the septage hauler's to be licensed was reviewed. The mailing will be certified return receipt to the hauler's and then attached to their application. The Board will require compliance or the hauler's license may be rescinded; the Board wanted the haulers to be apprised of this potential scenario.

The Agent gave the Chairman the electronic copies of the Building Permit Review draft policies of the drafts he had requested. The Conservation Commission draft policies were reviewed. The members have some comments, and a narrative will be included in the draft. The Board will review the final draft at the next meeting.

## Item 6: Administration

Richdale Dairy Store was requested to have a Title 5 Inspection done due to the sewage incident reported by the Rowley Police Department in December. To date, no Title 5 report has been received. The operators are new; however the previous operators were working with the Board of Health to improve their compliance with the Food Code. The Board wants the owner/operator to appear before the Board at their next meeting on January 22, 2001, and the Agent is to contact the owner/operator to discuss compliance and allow them the two weeks to cooperate.

Orders for Immunization Vaccine need to be signed by the Chairman for this time. The Board will need to coordinate with a doctor in town to sign the orders in the future.

The draft budget will be reviewed with Mr. Dimento. This is the first full year with the current Agent. The budget appears to be working well and within its limits. However, emergency situations, such as a communicable disease outbreak, would require some sub-contracting; these are the types of emergencies that may put the budget out of its limit.

The draft Town Report information for the year 2000 was reviewed. The report will be mostly itemized with the amount of activity and the narrative will be minimal. The Agent will work on the final version with input from the Chairman.

The draft fees were reviewed by the Board. Several changes were made. Perc and overnight soaks were changed to an hourly rate to coincide with the "additional hourly rate over the 3 hours" perc fee. A draft DSCP review fee was added. A new food establishment category for "0 seats, pre-packaged, Non-PHF, retail only" to be used for limited foods retail sales such as is found in a video store or pharmacy.

Motion to accept the fees for the Rowley Board of Health for the year 2001. Seconded. The Board voted 3 for and 1 against and the motion is accepted.

Mr. Nicholas Hurlin comes before the Board unannounced and not on the agenda. The Board allows Mr. Hurlin two minutes to address the Board. He addressed the Chairman and stated that at the Board of Selectman's Meeting, the Selectmen stated Mr. Hurlin threatened the Board of Health Chairman with his comment about Wakefield. He stated his comment to Mr. Costello earlier was not a threat, it was a request that such a thing not happen. He stated he had said the same thing to many other state officials today. He stated he is angry that this was taken as a threat and angry with the Board of Health for

not helping him resolve the problem he has. Mr. Hurlin's time was up and he was asked to leave by the Chairman. The Chairman also reminded Mr. Hurlin that he was invited to the next meeting on January 22, to address his issue and come to a resolution. Mr. Hurlin left angrily by slamming the door.

Motion by Mr. Melcher to enter into executive session at 9:00 p.m. for discussion of possible litigation issues. Seconded by Mr. Toomey. The Board voted unanimously to accept the motion.

Motion by Mr. Melcher to exit executive session at 9:14 p.m. Seconded by Mr. Toomey. The Board voted unanimously to accept the motion.

Motion to adjourn the Board of Health Meeting of January 8, 2001. The Board voted unanimously to adjourn the meeting at 9:14 p.m.

# EXHIBIT 8

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10833MBB

NICHOLAS E. HURLIN            )
    Plaintiff                )
                             )
v.                           )
                             )
TOWN OF ROWLEY,              )
    Defendant                )

## AFFIDAVIT OF CHARLES COSTELLO

I, Charles Costello, under oath, state as follows:

1.  I am the Chairman of the Rowley Board of Health. I also held this position on January 8, 2001 when the Plaintiff made what I believed to be threatening statements to me.

2.  The Plaintiff made the threatening statements to me during a telephone conversation. I had called the Plaintiff after learning that he had engaged in disruptive behavior at the Board of Health office earlier that day and was asked to leave by the Health Agent. I was informed that the Plaintiff wanted to discuss his alleged treatment at the Board of Health office that day.

3.  During our conversation, the Plaintiff said something to the effect that he did not want a "Wakefield" or "Colebrook, New Hampshire" to happen in Rowley.

4.  I was shocked and upset by the Plaintiff's statements and believed he was threatening me and /or employees of the Town of Rowley, as he was referring to two well-publicized incidents in which a number of people were shot to death. In fact the Wakefield shootings had occurred only days before the Plaintiff made his statements. In addition, although I had seen the Plaintiff engage in disruptive and argumentative behavior in the past, he had never used such threatening language towards me or other town employees that I was aware of.

5.  After the Plaintiff made his threats, I asked him to repeat what he had said. Rather than withdrawing his threats and apologizing to me, he said something to the effect of "you heard me."

6.  After ending my conversation with the Plaintiff, I called A.J. Paglia who is the Chairman of the Board of Selectmen and who has experience in law enforcement. I informed Mr. Paglia of the threats and then I called the Rowley Police Department.

7.    The Plaintiff appeared at the Rowley Board of Health meeting later that same evening. He was not on the agenda. He stated to the Board of Health that the statements he had made earlier to me were not threats but a request that such a thing not happen., He stated he was angry that his statement was taken as a threat and angry with the Board of Health for not helping him resolve the problem he has.

Signed under the pains and penalties of perjury this 3̲9̲ day of January, 2005.

_Charles Costello_
Charles Costello