# EXHIBIT 9

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10833MBB

NICHOLAS E. HURLIN )
    Plaintiff )
 )
v. )
 )
TOWN OF ROWLEY, )
    Defendant )

## DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

### INTERROGATORY NO. 1

According to a police report dated January 8, 2001, in the morning of January 8, 2001, the Plaintiff went into the Board of Health Office located in the Town Annex to request information re: Title V questions for property located at 27 Central Street, Rowley, Massachusetts. Who contacted Chairman Costello at his place of employment and what was he told re: the Plaintiff's request?

### ANSWER NO. 1

Mr. Costello does not recall. It may have been Wendy Hansbury or Alyssa Rusiecki.

### INTERROGATORY NO. 2

When Chairman Costello received this call from the (unknown) Board of Health employee, what specifically was he told re: Plaintiff and his request(s)?

### ANSWER NO. 2

Mr. Costello does not recall exactly what he was told but the substance of the conversation was that the Plaintiff was demanding information that they were unable to provide, that he was speaking in a loud and offensive manner and had to be asked to leave the office.

### INTERROGATORY NO. 3

What direction did Chairman Costello give the employee re: the situation at the office regarding the Plaintiff on January 8, 2001 and did your employee at the Board of Health Office fulfill Plaintiff's request?

### ANSWER NO. 3

Mr. Costello does not recall but may have told the employees to ask him to leave the office.

### INTERROGATORY NO. 4

What is the best present and prior Town policy for answering Title V questions generally to the public and/or designer of septic plans and specifically to the Plaintiff?

### ANSWER NO. 4

The Defendant objects to this Interrogatory on the grounds that it is incomprehensible as written. Notwithstanding or waiving this objection, it depends upon the questions being asked and whom they are directed to.

### INTERROGATORY NO. 5

In the police report of January 8, 2001, Chairman Costello stated [he] "the BOH, and Hurlin have had a long and unstable history." How does Chairman Costello know the Plaintiff and describe the 'unstable history' that he is witness to including all documents showing this 'unstable history' (to include communications or requests for making a history for Plaintiff)?

### ANSWER NO. 5

Mr. Costello was referring to the litigation Mr. Hurlin has pending in the Essex Superior Court against the Town of Rowley and Mr. Hurlin's behavior at numerous prior Board of Health meetings.

### INTERROGATORY NO. 6

What is Chairman Costello's definition of the term "unstable" as used in the conversation with Officer Belson?

### ANSWER NO. 6

Mr. Costello's definition of unstable is volatile and untrusting.

### INTERROGATORY NO. 7

Why did Chairman Costello use this particular word in describing Plaintiff?

## ANSWER NO. 7

Mr. Costello was referring to the litigation Mr. Hurlin has pending in the Essex Superior Court against the Town of Rowley and Mr. Hurlin's behavior at numerous prior Board of Health meetings.

## INTERROGATORY NO. 8

In the same police report, Chairman Costello stated that he "attempted to contact Hurlin on a couple of occasions." When, where and by what means did he try to contact him?

## ANSWER NO. 8

Mr. Costello does not recall but believes he tried to contact Plaintiff at his home by telephone.

## INTERROGATORY NO. 9

When Chairman Costello eventually did make contact with Plaintiff, he stated that the "conversation began to go sour." Exactly what was said and explain the term "sour."

## ANSWER NO. 9

The Plaintiff made what Mr. Costello believed to be threats.

## INTERROGATORY NO. 10

Exactly what was Plaintiff's phrase when he mentioned two unfortunate incidents (i.e, Colebrook, New Hampshire and Wakefield, Massachusetts) that had recently taken place?

## ANSWER NO. 10

Mr. Costello does not recall the Plaintiff's exact words but the Plaintiff said something to the effect that that either Mr. Costello or the town did not want an incident like the shootings in Wakefield, Massachusetts or Colebrook, New Hampshire to happen in Rowley.

## INTERROGATORY NO. 11

Why did Chairman Costello perceive the mention of two incidents synonymous with a threat towards him and/or the Town?

## ANSWER NO. 11

The Plaintiff's statements were made less than two weeks after the shootings in Wakefield, Massachusetts and the words used by the Plaintiff implied that there could be a similar incident in Rowley. Mr. Costello also believed that there was no explanation for the Plaintiff's statement other than that they were intended as a threat.

## INTERROGATORY NO. 12

If Chairman Costello perceived the mention of the two New England incidents as a threat to the well-being of Town Officials, why did he call two Board of Selectmen before he called the Police Department?

## ANSWER NO. 12

Mr. Costello first called Selectman Paglia as he was the Chairman of the Board of Selectmen and had experience in law enforcement and immediately thereafter he called the police.

## INTERROGATORY NO. 13

As a result of the time of the alleged "threat" made to Chairman Costello, Officer Belson explained that threatening a public official is a crime and is punishable. Chairman Costello didn't "wish to go this route in fear of upsetting the situation." Did Chairman Costello physically "fear" the Plaintiff?

## ANSWER NO. 13

Mr. Costello was extremely upset as a result of the statements made by the Plaintiff which resulted in physical manifestations. Mr. Costello did not know what to expect as Plaintiff had never used such threatening language before.

## INTERROGATORY NO. 14

Did Costello or Nathalie Cook tell the officer that Hurlin had said to him (four or more times) "that this is not a threat"?

## ANSWER NO. 14

Mr. Costello does not know what Ms. Cook told the police and does not recall what he told the police except to report the statements made by the Plaintiff. Also, after Mr. Hurlin made the threats, Mr. Costello asked him to repeat what he said. Rather than withdrawing his threats, Mr. Hurlin said something to the effect of "you heard me.".

## INTERROGATORY NO. 15

What, if any, input did Chairman Costello, Selectman Merry, or Chief of Police Kevin Barry contribute to the protocol initiated by the Rowley Police Department in regards to Plaintiff entering the Town Hall or Town Annex?

## ANSWER NO. 15

The Defendant objects to this Interrogatory on the grounds that it is incomprehensible as written.

## INTERROGATORY NO. 16

Did Chairman Costello, Members Peter Barbaro, Timothy Toomey, John Melcher, Health Agent Alyssa Rusiecki, Selectman Merry, Chief Barry or any officer of the Rowley Police Department speak to any newspaper or other media reporters concerning the protocol that the Town initiated against the Plaintiff regarding entering the Town Hall or the Town Annex? Please name each and every person and their position that has been interviewed regarding this question.

## ANSWER NO. 16

The defendant is not aware that any employees spoke with any newspaper or media reporters concerning the protocol initiated as a result of the threats made by the plaintiff. There was a reporter at the Board of Selectmen's meeting on January 8, 2001.

## INTERROGATORY NO. 17

If so, who was the reporter, what paper or media source did they represent?

## ANSWER NO. 17

Not applicable.

## INTERROGATORY NO. 18

If Chairman Costello, Chief Barry or any other member of the Board of Health, Board of Selectmen, or Police Department spoke to any media representative exactly what did they say regarding the Plaintiff and the Town and did they provide any material to the media? Please name each and every person and their position that has been interviewed regarding this question.

## ANSWER NO. 18

The defendant is not aware that any employees spoke with any newspaper or media reporters concerning the protocol initiated as a result of the threats made by the plaintiff. The so-called "protocol" was in the form of a memorandum sent by the Chairman of the Board of Selectmen to all town officials, department heads and chairmen and is considered to be a public document.

## INTERROGATORY NO. 19

Did Chairman Costello, Chief Barry or any other member of the Board of Health, Board of Selectmen, or Police Department supply a copy of this "Policy" to any media representative or any other person or group?

## ANSWER NO. 19

The Defendant objects to this Interrogatory on the grounds that it is vague as to the term "policy." If the Plaintiff is referring to the memorandum sent by the Chairman of the Board of Selectmen to all town officials, department heads and chairmen, none of the individuals listed above provided a copy of the memorandum to any media representative or person or group. The defendant does not know if any town employee provided a copy to anyone, however it is considered to be a public document.

## INTERROGATORY NO. 20

This "policy" was rescinded on August 18, 2003. Did Chairman Costello, Chief Barry or any other member of the Board of Health, Board of Selectmen, have any input as to the policy being rescinded and if so, what was the input?

## ANSWER NO. 20

The Defendant objects to this Interrogatory on the grounds that it is vague as to the term "policy." If the Plaintiff is referring to the memorandum sent by the Chairman of the Board of Selectmen to all town officials, department heads and chairmen, the Defendant further objects to this Interrogatory s it seeks information protected by the attorney-client privilege.

## INTERROGATORY NO. 21

During the Board of Health meeting held on January 8, 2001, the official minutes of the meeting noted that Plaintiff attended the meeting and was allowed two minutes to address the Board. If any member of the Town administration member were so in "fear" of Plaintiff, why did the Board invite him the January 22, 2001 meeting?

## ANSWER NO. 21

The Board agreed to provide the Plaintiff with an opportunity to discuss the septic system at 27 Central Street. A police officer was present at the meeting to ensure the safety of the Board of Health members.

## INTERROGATORY NO. 22

According to the official transcript of the minutes of the January 8, 2001 Board of Health meeting, you personally made reference to the Defendant and "juicy stuff" that would be discussed later in the meeting. Please elaborate in detail the substance of the meeting with regard to the Plaintiff.

## ANSWER NO. 22

The Defendant objects to this Interrogatory on the grounds that it is incomprehensible as written. The Defendant directs the Plaintiff to the Board of Health minutes of January 8, 2001.

## INTERROGATORY NO. 23

It was stated that Plaintiff "left angrily by slamming the door." After Plaintiff learned of the statement, Plaintiff did request that door be examined because the door automatically slams itself closed (due to the weight of the door and panic bar installed). To your knowledge, was the door ever examined and if so, what was the conclusion of the allegation made by Defendant?

## ANSWER NO. 23

The Defendant does not recall if the door was examined but believes that the Plaintiff slammed the door as he left.

## INTERROGATORY NO. 24

Has the matter or any other matter regarding the Plaintiff been specifically discussed by and between any Town Official and/or employee to include other Board of Health appointees, specifically, Mark Tolman, a former Board of Health Director, Newburyport, and/or Robin Blair, Board of Health Chairperson, Newburyport, and if so, what was the substance of the discussion(s)?

## ANSWER NO. 24

The Defendant objects to this Interrogatory on the grounds that it seeks information prepared in anticipation of litigation and/or trial and which is protected by the attorney work product doctrine and/or the attorney client privilege. Notwithstanding or waiving this objection, the Defendant is not aware any conversations with the Mark Tolman or Robin Blair.

Signed under the pains and penalties of perjury this 16 day of December, 2004.

Town of Rowley

By: *Deborah Egan*
Deborah Egan, Town Administrator

November Signed under the pains and penalties of perjury this 29th day of November, 2004.

Town of Rowley

By: /s/ Charles Costello
Charles Costello
Chairman, Rowley Board of Health


As to objections:

/s/ Pamela J. Fitzgerald
Pamela J. Fitzgerald, Esq./BBO #563130
BRODY, HARDOON, PERKINS & KESTEN,
One Exeter Plaza, 12th Floor
Boston, MA 02116
(617) 880-7100

Dated: