UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10833MBB

NICHOLAS HURLIN,        )
    Plaintiff            )
                         )
v.                       )
                         )
TOWN OF ROWLEY,          )
    Defendant            )

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Nicholas E. Hurlin (hereinafter, the "Plaintiff") submits this Memorandum of Law in support of its opposition to the Town of Rowley's (hereinafter, the "Defendant") Motion for Summary Judgment. Summary judgment should only be granted where the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine issue of material fact exists. See FED. R. CIV. P. 56. In this case, genuine issues of material fact exist, such that the Plaintiff is entitled to a trial on the merits and the Defendant is not entitled to summary judgment.

## I. Legal Standard for Summary Judgment

Summary judgment is only appropriate in cases where no genuine issue as to any material fact exists. See FED. R. CIV. P. 56. A genuine issue is one on which a jury could reasonably find for either party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A material fact is one that will affect the outcome of the case. Id. The moving party has the burden of establishing the lack of any genuine issue of material fact. Price v. General

1

Motors Corp., 931 F.2d 162, 164 (1st Cir. 1991). In assessing a motion for summary judgment, the court must not assume the function of the jury/fact-finder by considering the credibility of the witnesses or the weight of the evidence. On a motion for summary judgment, inferences to be drawn from the underlying facts contained in the moving party's materials must be viewed in the light most favorable to the opposing party. Adickes v. S.H. Kress & Co., 398 US 144, 157 (1970).

Summary judgment is inappropriate in this case because genuine issues of material fact exist with respect to each count of the Complaint, necessitating an evidentiary trial.

## II. The Defendant Is Not Entitled To Summary Judgment Regarding Count I Because The Defendant Caused A Deprivation Of The Plaintiff's Constitutional Rights Under Color Of Law, In Violation of 42 U.S.C.A. § 1983.

The actions of the Defendant's Board of Selectman and the Defendant's local police department worked a depravation of the Plaintiff's First Amendment Rights to free speech under color of law, in violation of 42 U.S.C.A. § 1983. The elements required to establish a violation of § 1983 include 1) conduct by the defendant under color of state law, and 2) the conduct must be a cause in fact of the a denial of the Plaintiff's rights secured by the United States Constitution of federal law. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). Local government agencies and municipalities can be sued directly under §1983 if they have caused a violation of a plaintiff's constitutional rights through "policy, ordinance, regulation, or decision." City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988). The "under color of law" requirement of

2

§1983 has been held to be equivalent to the "state action" requirement of the Fourteenth Amendment. Yeo v. Town of Lexington, 131 F.3d 241, 249 n.3 (1997).

The Plaintiff has set forth facts in his complaint, which taken in the light most favorable to him, create a genuine issue of material fact regarding whether the Defendant has violated § 1983. The involvement of the state or local officials in this situation clearly provides the state action required to show a direct violation of the Plaintiff's Constitutional Rights. See Monroe v. Pape, 365 U.S. 167 (1961). The policy created by the Defendant restricting the Plaintiff's access to Town Hall was a form of retaliation, designed to punish the Plaintiff for exercising his First Amendment rights. The Defendant's retaliatory actions specifically caused the plaintiff to be subjected to the deprivation of his right to voice his thoughts regarding matters of public concern, in violation of the First Amendment of the United States Constitution.

The Defendant contends that the Plaintiff cannot succeed on a claim for retaliation for the exercise of free speech. The facts thus far, however, taken in the light most favorable to the Plaintiff, demonstrate that 1) the Defendant was acting under the color of state law, 2) the Plaintiff's speech was protected under the First Amendment as he was voicing a matter of public concern in a proper forum, and 3) the Plaintiff's exercise of his right to free speech was the motivating factor which caused the Defendant to retaliate by restricting the Plaintiff's access to political forums in his town of residence.

The Defendant contends that the Plaintiffs speech was not protected expression because his speech constituted "fighting words," however, the facts set forth in the complaint create a genuine issue of material fact as to whether or not such a classification is appropriate. Although the First Amendment does not protect fighting words, the

definition of fighting words is restricted to words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942). Fighting words are "so infused with violence as to be indistinguishable from a threat of physical harm." Williams v. Planned Parenthood, 520 U.S. 1133, 1135 (1997). Language must be "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction" in order to be classified as "fighting words." Cohen v. California, 403 US 15, 20 (1971).

Although fighting words "warrant little protection under the First Amendment, a determination that speech falls within one of these categories requires plenary review to ensure protected speech is not infringed." US v. Amirault, 173 F.3d 28, 32 (1999). The United States Supreme Court has stated "in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." Boos v. Barry, 485 U.S. 312, 322 (1988). The rationale for denying protection to fighting words is that fighting words have no social value and no benefit may be derived from such speech. Chaplinsky, *supra* at 572.

In this case, the words used by the Plaintiff on January 8, 2001 were not fighting words and therefore are entitled to the full protection of the First Amendment. The words themselves did not inflict injury or incite an immediate breach of the peace, and the words had a socially redeeming purpose. The Plaintiff never used inflammatory language, and referred to the events in Wakefield and Colebrook as "tragedies". At the time of utterance, the Plaintiff specifically informed his listeners that his words were not intended as a threat.

The Plaintiff believed that it was not only appropriate, but his civic duty, to report procedural failures of the Board of Health to the chairman, Mr. Costello. Mr. Costello, as the Chairman of the Board of Health, is only answerable regarding his administration of the Board of Health to the Massachusetts Superior Court. As such, MR. Costello should be prepared to receive and consider grievances from citizens regarding the operation of the Board of Health. The Plaintiff brought his concerns to Mr. Costello because he was the person ultimately responsible for initiating reform. The Plaintiff was attempting to initiate reform, not make a threat.

Classification of the Plaintiff's speech as fighting words without full and adequate review would be improper. The Plaintiff's language was merely an expression of his concern with the procedural irregularities of the Defendant Board of Health, Board of Selectman, and Police Department. Therefore, a genuine issue of material fact exists regarding the proper classification of the Plaintiff's speech.

### III. The Defendant Is Not Entitled To Summary Judgment Regarding Count II Because The Defendant Retaliated Against the Plaintiff For Exercise Of His Constitutional First Amendment Rights.

As discussed in count I, the Defendant has violated the Plaintiff's First Amendment right to freedom of expression. Even though the Constitution does not directly address the issue of retaliation against the exercise of free speech, such retaliation is actionable because "retaliatory actions may tend to chill individuals' exercise of constitutional rights." Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004). Retaliation may take many forms, including negative treatment, threat of litigation, economic injury, denial of a license application. Id.

Although the Defendant contends that the Plaintiff's expression was not protected, the Plaintiff contends that a genuine issue of material facts exists regarding the classification of his speech for the reasons set for above. See *supra*, discussion page 3-4. The Defendant retaliated against the Plaintiff by restricting his access to Town Hall and defaming his character. The Defendant's actions were directly in response to and motivated by the Plaintiff's exercise of his right to free speech at the Board of Selectman meeting on January 8, 2001, as well as in retaliation for the ongoing litigation which the Plaintiff filed against the Defendant. The retaliations were designed to chill the Plaintiff's freedom of expression. The Defendant has failed to meet its burden and summary judgment should not apply to this count of the Plaintiff's complaint.

Furthermore, the Plaintiff's speech should receive heightened protection under the First Amendment, as the subject matter addressed a matter of public concern. Where expression relates to a matter of public concern, the court must consider the public's First Amendment interests in free discussion of the topic. Tang v. Rhode Island Dep't of Elderly Affairs, 163 F.3d 7, 12 (1st Cir. 1998). In this case, the Plaintiff was raising serious issues relating to the administration of the Defendant's Board of Health and Board of Selectman, and was expressing concerns over the potential consequences of their haphazard administration.

**IV. The Defendant Is Not Entitled To Summary Judgment Regarding Count III Because Genuine Issues of Material Fact Exist Regarding Whether The Defendant Violated Interfered With the Plaintiff's Business Relationships and Defamed the Plaintiff.**

**A. The Defendant Committed Tortious Interference With The Plaintiff's Business Relationships.**

6

To succeed on a cause of action for interference with business relationships in Massachusetts, the Plaintiff must show the following elements: 1) a business relationship, 2) the defendant knew of the relationship, 3) the defendant acted intentionally and maliciously to interfere with the relationship, and 4) the defendant's actions caused harm to the Plaintiff. Zimmerman v. Direct Federal Credit Union, 262 F.3d 70 (1st Cir. 2001).

The Defendant has interfered with the Plaintiff's business relationships and interfered with his utilization of his property. The Defendant deliberately and willfully prevented the Plaintiff from obtaining the business advantages that he should have realized from managing the property at 27 Central Street, Rowley, Massachusetts. Specifically, the Defendant has interfered by publicly ridiculing the Plaintiff, refusing to issue applications for an installer's license, and illegally condemning the Plaintiff's property without proper notice.

The Plaintiff learned from Mark Tolman, the Board of Health Agent in Newburyport, that Mr. Tolman was in contact with Defendant employees and was told that he should not grant the Plaintiff a license in Newburyport, despite the fact that the Plaintiff is a qualified candidate and has his license in other municipalities. Mr. Tolman informed the Plaintiff that numerous Defendant employees had said negative comments about the Plaintiff and professionally degraded him. The Plaintiff eventually was able to obtain his license in Newburyport, but suffered damage to his reputation and undue emotional distress as a result of the Defendant's interference.

The Plaintiff's reputation was compromised by the Defendant's employees defamation. One year after obtaining his license in Newburyport, when the Plaintiff's license was up for renewal, Mr. Tolman attempted to refuse the renewal. As a reason for

his attempted refusal, Mr. Tolman offered the fact that the Plaintiff had not performed any inspections in the prior year. The Plaintiff properly pointed out that there is no requirement that an license holder actually have performed any inspections in order to renew his or her license. Mr. Tolman's clear bias against the Plaintiff demonstrates damage to the Plaintiff's reputation caused by the Defendant.

**B. The Defendant Defamed the Plaintiff.**

Defamation involves the publication, oral or written, to a third party of a false statement concerning a person, which causes damages. In order to succeed on a defamation claim, the Plaintiff must show that 1) the defendant made a defamatory statement which subjected the plaintiff to contempt, ridicule, hatred or scorn, 2) the statement must be made to a third party, 3) if the defamatory statement is a matter of public concern, the Plaintiff must prove that the statements were false, and 4) the Plaintiff must show special damages. Yohe v. Nugent, 321 F.3d 35, 40 (1st Cir. 2003). If the plaintiff is a public figure, a showing of actual malice on the part of the defendant may be required. Id. If the plaintiff is a private person and the statement involves a matter of public concern, some level of fault must be proven, but actual malice is not required. Mangual v. Rotger-Sabat, 317 F.3d 45, 66 (1st Cir. 2003).

Although the Defendant contends that the Plaintiff was a public figure, which would create a higher burden of proof by requiring actual malice on the part of the defendant, the Plaintiff denies this assertion. There is no exact definition of the term "public figure" for a defamation cause of action, but the Supreme Court has ruled that those who hold governmental office are public figures. Gertz v. Robert Welch, Inc., 418

8

U.S. 323 (1974). Additionally, people who successfully seek out the public's attention by reason of their accomplishments can be considered public figures. Id. A person should not be deemed a public figure "in the absence of clear evidence of general fame or notoriety in community and pervasive involvement in affairs of society." Id. at 351. A public figure is a person who is prominent in the community to such an extent that discussion about that person is a matter of public concern. Furthermore, the status as a public figure may only extend to the particular area in which the person is publicly prominent. Id. at 345.

The Plaintiff is not a "public figure," and therefore the ordinary standard of liability applies. The Defendant does not offer even a scintilla of evidence nor reasoning supporting their assertion that the Plaintiff is a public figure. The Plaintiff has never held public office and is not a governmental policy maker. The Plaintiff is a private resident of the town of Rowley. Assuming arguendo, however, that the Plaintiff was a public figure, actual malice is apparent based upon the long-term multiple litigation issues existing between the Plaintiff and the Defendant and the fact that the Plaintiff specifically informed the Defendant that his statement was not intended as a threat.

The Plaintiff has produced a plethora of evidence demonstrating defamation by the Defendant. The fact that the Plaintiff was present at the Board of Selectman meeting on January 8, 2001 is completely irrelevant. Publication may be verbal and only requires communication to a third party; it does not depend on the absence of the Plaintiff. The Defendant was slandered at an illegal executive meeting, held on January 8, 2001 to discuss him, and he was not given notice of the meeting, as required by the regulations.

Additionally, the Plaintiff was libeled in a letter written by the Chief of Police, a memo written by the Chairman of the Board of Selectman, and several newspaper articles.

The letter of Chief Barry set forth the restrictions placed upon the Plaintiff and instructing all the town employees to call the police if the Plaintiff appears at Town Hall unannounced or unaccompanied by a police officer. The natural implications of such a letter injure the reputation of the Plaintiff and expose him to public ridicule, hatred, contempt, or degradation. Although the letter was address to the Plaintiff, it in fact was made public to many town employees.

On January 9, 2001, a memorandum was sent from the then-presiding Chairman of the Rowley Board of Selectman, Mr. G. Robert Merry, to all department heads, employees, boards, and commissions, informing the recipients that the Plaintiff is not to enter Town Hall or Town Hall Annex without twenty-four hour advance notice and a police escort. The recipients were requested to call the police immediately if the Plaintiff entered the Town Hall or Town Hall Annex without such an appointment and a police escort. Clearly, the publication of such a document to all town employees subjects the Plaintiff to hatred, ridicule, and embarrassment in his hometown. The evidence strongly suggests that the Defendant was attempting to retaliate against the Plaintiff for his earlier lawsuit regarding the illegal condemnation of the property located at 27 Central Street, Rowley, Massachusetts. Denying the Plaintiff free access to the Town Hall through intentional defamation allowed the town to effectively prevent the Plaintiff from utilizing resources at Town Hall, which should have been available to allow him to regain use of the property at 27 Central Street.

The newspaper articles published in The Daily News on January 9, 10, and 11th put the Defendant's defamatory statements into print. The author of The Daily News articles, Jesson Ingraham, stated that a Defendant town employee gave the details of the situation to The Daily News for publication. Selectman Robert Madden was quoted in a January 11, 2001 article in The Daily News, stating that the Plaintiff could not be allowed to "terrorize" town employees. Such comments are intended to portray the Plaintiff as an unstable and violent terrorist, despite the fact that the Plaintiff clearly stated that he was not intending to threaten anyone. As a result of all of these defamatory statements regarding the Plaintiff, he has suffered substantial damage to his business and his reputation. Summary judgment is not appropriate where genuine issues of material fact exist regarding whether the Defendant defamed the Plaintiff.

**IV. The Defendant Is Not Entitled To Summary Judgment Regarding Count IV Because Genuine Issues of Material Fact Exist Regarding Whether the Defendant Has Engaged in Unfair Business Practices.**

Under common law, public officials have a fiduciary duty to "ensure that the public receives their honest service free of improper influence of corruption." U.S. v. Sawyer, 239 F.3d 31 (1st Cir. 2001). This fiduciary duty owed by public officials to the public includes an obligation not to misuse their office. U.S. v. Ochs, 842 F.2d 515, 522 (1st Cir. 1988). A public officer must act for the benefit of the public, and members of the public have a right to demand proper performance of the public official's duties. United States v. Boylan, 898 F.2d 230 (1st Cir. 1990).

In this case, the public officials on the Board of Health and the Defendant Board of Selectman have neglected their fiduciary duty to the public citizens of Rowley. The duty of the Board of Health is to administer public health services and enforce state and

local health regulations and sanitary codes. The Board of Health is also obligated to follow local regulations. The Defendant Board of Health has failed to properly administer state and local laws and has not followed proper procedure. The Board of Heath illegally condemned the property located at 27 Central Street, Rowley, Massachusetts. The Plaintiff has requested an audit or examination of the application of the procedures and policies of the Board of Health on numerous occasions, with little response.

The Defendant's failure to enforce and follow the proper procedures has directly caused the current conflict, causing the Plaintiff to suffer damage to his reputation, loss of business, and undue emotional distress. Genuine issues of material fact exist regarding whether the Defendant has breached its common law duty to properly execute its fiduciary duties to the public.

## VI. Conclusion

For the foregoing reasons, the Plaintiff opposes the Defendat's motion for summary judgment.

The Plaintiff,
Pro Se,

*[signature]*
Nicholas E. Hurlin
PO Box 11
Newburyport, MA 01950

Dated: March 7, 2005