UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NICHOLAS E. HURLIN,
  Plaintiff,

  v.                                          CIVIL ACTION NO.
                                              04-10833-MBB
TOWN OF ROWLEY,
  Defendant.

**MEMORANDUM AND ORDER RE:**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 11)**

**August 9, 2005**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment
(Docket Entry # 11) filed by defendant Town of Rowley
("defendant").  After conducting a hearing, this court took the
motion (Docket Entry # 11) under advisement.

BACKGROUND

Plaintiff Nicholas E. Hurlin ("plaintiff") is a Title V
inspector residing at 441 Central Street in Rowley,
Massachusetts.[1]  This case arises from an exchange of words
between plaintiff and town officials on January 8, 2001.  Leading

---

[1] Title 5 refers to certain state environmental regulations
governing on site septic or sewage treatment and disposal
systems.  Mass.Regs.Code tit. 310, §§ 15.00 et seq.; Campagna v.
Massachusetts Dept. of Environmental Protection, 334 F.3d 150,
152 n. 5 (1st Cir. 2003).

up to this exchange is a decade long dispute between plaintiff and defendant involving property plaintiff owned from 1987 to 1995 located at 27 Central Street in Rowley.  (Docket Entry # 13, ¶ 4, first sentence).[2]

In 1988, defendant filed a complaint seeking to enjoin plaintiff from converting the single family home at 27 Central Street ("the property") into a two family home.  (Docket Entry # 13, ¶ 4, second sentence; Docket Entry # 13, Ex. 1).  The injunction was granted and remained in effect on January 8, 2001.[3]  Id.

In 1991, plaintiff filed a separate action after defendant condemned the property because of problems with the septic system.  (Docket Entry # 13, ¶ 4, fourth sentence); see LR. 56.1.  In particular, plaintiff filed a takings claim against defendant in Massachusetts Superior Court Department (Essex County), Civil Action Number 91-2563 ("the 1991 state court action"), alleging that defendant did not properly follow state law in condemning the property.  Id.  Ten years later in 2001, the judge in the 1991 state court action vacated the condemnation order and

---

[2]  Plaintiff fails to controvert this statement in defendant's statement of undisputed material facts.  It therefore comprises part of the summary judgment record.  LR. 56.1; Stonkus v. City of Brockton School Dept., 322 F.3d 97, 102 (1st Cir. 2003).

[3]  Plaintiff alleges, without supporting documentation, to have subsequently filed for a mixed residential/commercial use permit.  The status of that request is unclear on the record.

remanded the matter to the Rowley Board of Health ("the Board"),
finding that the Board had not properly followed regulations
governing condemnation of private property.  Id.  The judge found
that the condemnation proceedings were "characterized by a level
of informality" that led to "a failure [of the Board] to define
with sufficient precision the problem to be solved, the nature of
the solution, [and] the deadline."  (No Docket Entry Number
Assigned, March 9, 2001 Memorandum and Order for Judgment in the
1991 state court action) ("March 2001 Memorandum and Order").
The judge hoped that a clear and correct process would provide
"an expeditious conclusion to this decade-long affair."  Id.
During the April 5, 2005 motion hearing before this court,
defendant indicated, uncontroverted by plaintiff, that a jury
decided in favor of the Town on remand.  The record contains no
specific information about plaintiff's zoning request or any new
Title V application.

    In 1995, plaintiff sold the property but continues to occupy
himself with the zoning request and septic design.  (Docket Entry
# 13, ¶ 5); see LR. 56.1.  Thus, part of plaintiff's business at
the Town Hall involves his attempts to acquire a zoning change in
the face of a permanent injunction and his efforts to get an
approved septic system at 27 Central Street.  The answers to
interrogatories indicate frustration between plaintiff and
defendant arising from the lengthy litigation.  (Docket Entry #

3

13, Ex. 9, No. 7).  Plaintiff complained he had been refused service numerous times by employees at the Town Hall.  (Docket Entry # 13, Ex. 2, pp. 11-12).  At his deposition, plaintiff testified to being asked to leave the Town Hall on multiple occasions, describing himself as "passionate."  (Docket Entry # 13, Ex. 2, p. 13).

On January 8, 2001, plaintiff visited the Board's office at the Town Hall to submit a "soil investigation report" for 27 Central Street and to request issuance of a permit to construct a disposal system ("DSC permit").[4]  (Docket Entry # 13, Ex. 3). Wendy Hansbury ("Hansbury"), the Board's Administrative Assistant, questioned the grounds for issuing a DSC permit and informed plaintiff that his 1991 septic plan for the property was out of date, thus the permit could not be issued.  Id.  Plaintiff argued that he had submitted a recent version of the plan and became agitated, according to Hansbury, who eventually asked plaintiff to leave.  Id.  Plaintiff, in his deposition, testified that he then asked Alyssa Rusiecki ("Rusiecki"), Public Health Agent, questions about Title V requirements but was rebuffed. (Docket Entry # 13, Ex. 2, p. 12).  Rusiecki stated she had been called to Hansbury's desk to deal with plaintiff who was raising his voice, invading the personal space of Hansbury and generally

---

[4]  On January 8, 2001, the 1991 state court action was still pending in state court.

4

causing a disturbance.  (Docket Entry # 13, Ex. 3).  Rusiecki
asked plaintiff to leave and assured him that Charles Costello
("Chairman Costello"), Chairman of the Board of Health at the
relevant time, would contact plaintiff regarding his complaints.
(Docket Entry # 13, Ex. 3, p. 2).

Chairman Costello telephoned plaintiff between 4:00 and 5:00
p.m. that day to discuss plaintiff's complaints.  (Docket Entry #
13, Ex. 2, p. 22).  Plaintiff spoke about problems and
inefficiencies at the Board and warned that if townspeople did
not receive better service there was a risk of an incident
similar to Wakefield or Colebrook.[5]  (Docket Entry # 13, Ex. 2,
pp. 26-29).  Chairman Costello took this as a threat.  (Docket
Entry # 13, Ex. 8).

Chairman Costello then telephoned Selectman A. J. Paglia
("Selectman Paglia"), a former police officer, and the police
department to relate what he perceived as threatening behavior.
Id.  Plaintiff insists he did not intend to threaten Chairman
Costello or town employees.  (Docket Entry # 13, Ex. 2, p. 29).

The same evening, January 8, 2001 at 7 p.m., plaintiff went
to the Board of Selectman meeting to explain that he did not

---

[5]  Two weeks prior, on December 26, 2000 in Wakefield, MA, a
man frustrated with his employer for withholding taxes from his
paycheck, shot and killed seven co-workers.  (Docket Entry # 13,
Ex. # 5).  On August 19, 1997, a "small-town troublemaker" in
Colebrook, N.H., shot and killed four people, starting with a
former town selectman with whom the attacker had feuded.  (Docket
Entry # 13, Ex. # 4).

intend to threaten Chairman Costello.  (Docket Entry # 13, Ex. 2, p. 33).  Plaintiff ended up in his third argument of the day, this time with Selectman Robert Madden ("Selectman Madden"). Selectman Madden demanded that plaintiff not threaten town officials while plaintiff insisted he merely wanted to warn of safety risks.  (Docket Entry # 13, Ex. 6).

On January 9, 2001, Chief of Police Kevin Barry issued an order ("the order") barring plaintiff from entering the Town Hall and the Town Hall Annex except by appointment made 24 hours in advance and accompanied by a police officer "as a result of [plaintiff's] threatening behavior."  (Docket Entry # 13, Ex. 11).  The same day, defendant sent a letter to "All Town Department Heads, Employees, Boards and Commissions" instructing them to telephone the police if plaintiff entered the Town Hall or the Town Hall Annex without an appointment.  (Docket Entry # 13, Ex. 12).  On January 24, 2001, plaintiff wrote a letter demanding that defendant rescind the order.  (Docket Entry # 13, Ex. 13).  On August 18, 2003, defendant rescinded the order. (Docket Entry # 13, Ex. 14).  The record does not contain any evidence of enforcement of the order though plaintiff claimed "it was an impediment to normal pursuit of business" and that he missed a "tax sale" because of it.  (Docket Entry # 13, Ex. 2, p. 49).

PROCEDURAL HISTORY

The four counts of the amended complaint filed pro se allege various claims under state and federal law.[6]  Count I asserts a free speech claim under 42 U.S.C. § 1983 ("section 1983").  Liberally construing the amended complaint, counts II, III and IV contain elements of a First Amendment retaliation claim under section 1983.  Count III includes state law claims of tortious interference with business relationships and defamation.  Also, Count III alleges that defendant denied a license to a third party in violation of the American Disabilities Act.[7]  The amended complaint globally alleges, without citation, a violation of state law under Article 16 of the Massachusetts Declaration of Rights in the Massachusetts Constitution ("art. 16").  Finally, Count IV reasserts prior allegations.  Defendant seeks summary judgment on all claims.

DISCUSSION

---

[6]  In reviewing a pro se complaint, courts construe the pleadings liberally.  See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990).  Pro se status, however, does not insulate plaintiff from complying with procedural and substantive law.  Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 225 n. 7 (1st Cir. 2003) (pro se plaintiff's failure to develop legal argument resulted in waiver of that argument).

[7]  This claim fails for lack of standing.  McInnis-Misenor v. Maine Medical Center, 319 F.3d 63, 69 (1st Cir. 2003) ("ADA does not permit private plaintiffs to bring claims [to] vindicate other people's injuries").

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits[,] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A genuine issue of fact is one that a reasonable jury could resolve in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must review the record and make reasonable inferences in the light most favorable to the non-moving party. Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 39 (1st Cir. 1992). Defendant, as the moving party, may either offer evidence to disprove an element of plaintiff's case or point out the lack of evidence supporting the plaintiff's case. Celotex, 477 U.S. at 325; Rogers v. Fair, 902 F.3d 140, 143 (1st Cir. 1990). Once the movant has met its burden, the non-moving party may not rest on mere allegations or denials, but must set forth specific facts by affidavits, or depositions, answers to interrogatories, and/or admissions on file to demonstrate that a reasonable jury could find for the non-moving party at trial.[8] Rogers, 902 F.3d at 143 (quoting Anderson, 477

_____

[8] Plaintiff, like myriad pro se litigants before him, fails to comprehend that he must bring forth evidence to support his legal claims in order to meet his so called "evidentiary burden." While plaintiff may point to testimony in his own deposition as evidence, during discovery he should have sought sworn

U.S. at 249-250).

To sustain an action under section 1983, plaintiff must show that the conduct complained of was committed under color of state law and that the conduct denied rights secured by the Constitution or laws of the United States.  Collins v. Nuzzo, 244 F.3d 246, 250 (1st Cir. 2001).  It is undisputed that state action exists.[9]  Plaintiff, however, must demonstrate that the state action, i.e., the order and conduct related thereto, deprived him of his constitutional rights.  That in turn depends on the standards that govern the particular constitutional right at issue.  Id.

I.  Free Speech

Plaintiff alleges, in part, that the order was a per se violation of the First Amendment.  (Docket Entry # 6, p. 5, ¶ 12).  Towns, however, possess lawmaking authority and may enact ordinances in response to complaints.  Mass. Const. amend. art. 2, § 6; National Amusements, Inc. v. Town of Dedham, 43 F.3d 731,

_____

statements, i.e., depositions and affidavits, of individuals who witnessed or participated in the allegedly wrongful conduct and viewed it as such.

[9]  Municipalities and other local governments may be sued directly if they allegedly caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (1978).

734 n. 1 (1st Cir. 1995) (affirming summary judgment where ordinance did not violate First Amendment).  Moreover, a restriction enacted in reaction to the conduct of an individual or a particular person does not always violate the First Amendment.  Hill v. Colorado, 530 U.S. 703, 724-725 (2000). Chairman Costello, Selectman Madden and Selectman Paglia interpreted plaintiff's speech as a threat and reacted accordingly.  (Docket Entry # 13, Ex. 6, p. 26; Docket Entry # 13, Ex. 8; Docket Entry # 13, Ex. 10).  Summary judgment is therefore proper with respect to any section 1983 claim by plaintiff alleging the order is a per se violation of the First Amendment.  See National Amusements, Inc., 43 F.3d 731.

Count I, Count II and paragraph 16 of Count III further allege that the order violated plaintiff's freedom of speech and access to public facilities.  (Docket Entry # 6, p. 5).  The Supreme Court in Frisby v. Schultz, 487 U.S. 474 (1998), elaborates the well established standard used to analyze free speech claims of private citizens.[10]  Regulation of speech in

_____

[10]  Defendant argues that plaintiff is not protected by the First Amendment because his speech was "fighting words," and the restriction was "reasonable."  (Docket Entry # 12, pp. 3-5).  The more appropriate analysis is under the Frisby analysis because construing the evidence most favorably for plaintiff, the initial telephone conversation between plaintiff and Chairman Costello was unlikely to incite immediate physical harm.  Chaplinsky v. New Hampshire, 315 U.S. 568, 571-572 (1942); see also Rogers v. U.S., 422 U.S. 35, 46 (1975) (speaker must intend to convey the impression of a serious threat); cf. Frisby, 487 U.S. 474 (examining constitutionality of municipal ordinance enacted in

public space is subject to close scrutiny.[11]  Carey v. Brown, 447
U.S. 455, 460-461 (1980).

    Freedom of speech is not absolute, however, it is subject to
"reasonable time, place, and manner restrictions."  Police Dept.
of City of Chicago v. Mosley, 408 U.S. 92, 100 (1972).  For a
regulation to pass muster under free speech scrutiny, it must be
(1) content neutral, (2) narrowly tailored to serve (3) a
significant government interest, and (4) leave open ample
alternative channels to communicate the information.  Frisby v.
Schultz, 487 U.S. 474, 481-482 (1988); Clark v. Community for
Creative Non-Violence, 468 U.S. 288, 293 (1984); National
Amusements, Inc., 43 F.3d at 736-737.

    A regulation is content neutral if it serves purposes
unrelated to the content of speech, even if the regulation has an

---

response to plaintiff's conduct); compare Commonwealth v. Milo
M., 740 N.E.2d 957, 974-975 (Mass. 2001) (First Amendment does
not protect threatening behavior).  Plaintiff responds by
misapplying the doctrine of "public concern," which applies when
the government fires an employee for speaking out politically or
on matters of public interest, but does not apply to private
citizens such as plaintiff.  (Docket Entry # 17, p. 3); Connick
v. Myer, 461 U.S. 138, 147-148 (1983); Campagna v. Massachusetts
Dept. of Environmental Protection, 334 F.3d at 155 (private Title
V inspector is not a government employee under the First
Amendment calculus).

    [11]  This court assumes arguendo that the Town Hall is at
minimum a "designated" or "limited" public forum open to
plaintiff's speech regarding town business.  Cornelius v. NAACP
Legal Defense & Education Fund, Inc., 473 U.S. 788, 797 & 799-800
(1985); Hotel Employees & Restaurant Employees Union, Local 100
of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dept.
of Parks & Recreation, 311 F.3d 534, 545-546 (2nd Cir. 2002).

incidental effect on some expression.  Ward v. Rock Against
Racism, 491 U.S. 781, 791 (1989).  Plaintiff alleges that the
purpose of the order was to "chill" his speech.  (Docket Entry #
17, p. 6).  The order and the police report, however, show that
defendant instituted the order to ensure the safety of government
employees at the Town Hall.  (Docket Entry # 13, Ex. 10 & 11).
Chairman Costello's affidavit indicates he felt threatened by
plaintiff's statements and subsequently contacted police.
(Docket Entry # 13, Ex. 8).  Plaintiff's response to summary
judgment fails to meet his burden to show that the order's
purpose was to curtail or limit complaints against defendant.
National Amusements, Inc., 43 F.3d 731, 737 (affirming summary
judgment against challenge to speech restriction that was content
neutral because it did not suppress a particular message).
Therefore, plaintiff fails to raise a genuine issue of fact as to
content neutrality.

A regulation is narrowly tailored if it "targets and
eliminates no more than the exact source of the 'evil' it seeks
to remedy."  Frisby, 487 U.S. at 485.  Defendant sought to
address escalating behavior between plaintiff and defendant.
(Docket Entry # 13, Ex. 8).  The terms of the order allow
plaintiff access to town officials to conduct business and to
voice complaints, while reducing the risk of heated encounters
and officials unprepared to address inquiries.

12

Plaintiff states in his deposition that the order was an "impediment" to normal business and that he missed a "tax sale" because of it.  (Docket Entry # 13, Ex. 2, p. 49).  Plaintiff, however, does not provide evidence that he was denied an appointment with a town employee or a police escort.  Incidental effects on expression do not raise a constitutional issue.  Ward, 491 U.S. at 791.  The regulation was narrowly tailored because it allowed plaintiff to continue to enter the Town Hall while protecting safety and order therein.  Schultz v. Kelly, 188 F.Supp.2d 38 (D.Mass. 2002) ("the fundamental flaw in plaintiff's [claim] is factual . . . it is undisputed that plaintiff never missed a flea market").

Moreover, the regulation furthers the state's significant interest in public safety.  Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico, 478 U.S. 328, 343 (1986); McGuire v. Reilly, 260 F.3d 36, 44 (1st Cir. 2001).  Plaintiff insists he did not pose a safety risk because he did not *intend* to threaten violence.  (Docket Entry # 13, Ex. 2, p. 25).  But town officials and police have a duty to maintain peace and order in a community, which may entail responding to complaints with ordinances.  Frisby, 487 U.S. at 476.

Finally, the order left open ample channels for plaintiff to communicate his information because he had access to the Town Hall and town officials by appointment.  Cf. Gun Owners' Action

13

League, Inc. v. Swift, 284 F.3d 198, 211-212 (1st Cir. 2002) (ban of target practice using human effigies left open ample alternative channels to express views).  Plaintiff could make an appointment to speak with any official and visit any part of the Town Hall.  Plaintiff states that the order was an "impediment" but, as previously noted, incidental effects do not raise a constitutional issue.  (Docket Entry # 13, Ex. 2, pp. 48-49); Ward, 491 U.S. at 791; National Amusements, Inc., 43 F.3d at 737.

In sum, the order did not violate plaintiff's freedom of speech because it was a content neutral time, place and manner restriction that furthered an important government interest in safety without restricting plaintiff's ability to convey his message.


II.  First Amendment Retaliation

As a preliminary matter, Count II of plaintiff's amended complaint appears similar to Count I, but in his response to summary judgment plaintiff alleges unconstitutional retaliation based on First Amendment government employment law.  (Docket Entry # 17, p. 5) (citing Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004)).  The First Circuit made clear in Campagna, 334 F.3d at 155, however, that a plaintiff employed as a private Title V inspector is not a government employee for First Amendment purposes.  Consequently, as noted supra in footnote

ten, the government employee "public concern" doctrine does not apply. Campagna, 334 F.3d at 155.

Turning to the retaliation claim, counts II, III and IV allege a violation of the First Amendment for retaliatory delay or denial of permits and licenses. Without doubt, a private citizen has a First Amendment right of action for denial of a license or permit in retaliation for protected speech. Nestor Colon Medina & Sucesores, Inc. v. Custodo, 964 F.2d 32, 41 (1st Cir. 1992). The legal standard is similar to an equal protection claim. Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000). To establish a prima facie case of retaliation under the First Amendment, plaintiff must show that (1) he engaged in protected speech, (2) he qualified for the license or permit sought and (3) defendant's desire to retaliate against plaintiff's speech motivated defendant's delay or denial of permit. Baker v. Coxe, 230 F.3d at 475. Defendant may rebut the prima facie case by showing a legitimate non-retaliatory reason for denial of the permit. Nestor Colon, 964 F.2d at 41.

Assuming *arguendo* plaintiff's speech was protected, he does not provide any evidence to support the second two elements of the prima facie case. Plaintiff provided no evidence that he qualified for any permit or license that defendant allegedly denied or delayed. See Campagna, 334 F.3d 150 (detailing Title V requirements and contradictory inspections giving rise to claim).

Nor did plaintiff provide factual or legal evidence sufficient to create a genuine issue of material fact that he was entitled to the permit he requested on January 8, 2001. Moreover, plaintiff acknowledged in his deposition that he had no evidence defendant interfered with his application for a Title V inspectors license in neighboring towns.[12] (Docket Entry # 2, p. 70). The only evidence of delay is an unsworn memo from Rusiecki noting that she had failed to return a telephone call from plaintiff in the first week of January, 2001. (Docket Entry # 13, Ex. 3).

Furthermore, "a plaintiff must provide more than conclusory allegations of retaliation to defeat a motion for summary judgment." Baker v. Coxe, 52 F.Supp.2d 244, 250 (D.Mass. 1999). Indeed, arbitrary denial or "wrongheadedness" on the part of local government bureaucracies is not sufficient for a constitutional claim. Baker, 230 F.3d at 474. Plaintiff must meet a heavy evidentiary burden to show government abuse of power that "shocks the conscience." Id. Plaintiff did not submit a

_____

[12] Plaintiff stated in his deposition that defendant told an official from Newburyport, Mark Tolman ("Tolman"), not to issue plaintiff a Title V inspector license. (Docket Entry # 13, Ex. 2, p. 66). Plaintiff, however, acquired the license and fails to proffer evidence of interference to meet his burden in response to defendant's denial of interference on summary judgment and in its answers to interrogatories. (Docket Entry # 13, Ex. 9, No. 24); cf. Centro Medico del Turabo v. Feliciano de Melicio, 406 F.3d 1, 10 (1st Cir. 2005) (First Amendment retaliation claim fails for lack of adverse action by government). Thus, plaintiff does not raise an issue for trial on defendant's interference with other towns. Anderson, 477 U.S. at 249-250 .

deposition of any town employee showing that defendant intervened to block plaintiff's business relationships in retaliation for exercise of First Amendment rights. Rubinovitz v. Rogato, 60 F.3d 906, 908-909 (1st Cir. 1995) (cataloging interventions of the defendant to obstruct the plaintiff's pending permits).

Plaintiff suggests that the 1991 finding that defendant improperly condemned a property at 27 Central Street supports his present claim. (Docket Entry # 17, p. 7). In Campagna, 334 F.3d 150, however, a Title V inspector's allegation that his suit against the Massachusetts Department of Environmental Protection motivated enforcement action against him was not sufficient to establish a claim. Similarly, in Collins v. Nuzzo, 244 F.3d 246, statements made by a city Alderman expressing irritation over having been previously sued by a licensee were insufficient to establish a First Amendment retaliation claim for denial of license where the defendant gave non-retaliatory reasons. Safety is a non-retaliatory reason. Posadas de Puerto Rico Associates, 487 U.S. at 343; Rubinovitz v. Rogato, 60 F.3d 906, 912 (1st Cir. 1995). Thus, in addition to the second prong of the prima facie case, plaintiff also fails to set forth sufficient facts to support the third prong, retaliatory motivation.

In sum, plaintiff's claim alleging a retaliatory denial of permits or licenses under the First Amendment fails for lack of evidence showing he qualified for any permit denied or suffered

unconstitutional delays.  See Campagna, 334 F.3d at 155.  The federal section 1983 claims are therefore subject to dismissal on summary judgment.


III.  STATE LAW CLAIMS

A.  Violation of Massachusetts Constitution

Construing the complaint liberally, in Count II plaintiff alleges the order violated his free speech under art. 16 of the Massachusetts Declaration of Rights.  M.G.L.A. Const. Pt. 1, art. 16 ("the right of free speech shall not be abridged").  The First Amendment analysis, supra, guides the art. 16 inquiry.  Hosford v. School Committee of Sandwich, 659 N.E.2d 1178, 1180 n. 5 (Mass. 1996); see Walker v. Georgetown Housing Authority, 677 N.E.2d 1125, 1127 (Mass. 1997) (First Amendment and art. 16 are cognate).  Although a court may find an art. 16 violation where no First Amendment violation exists, Mendoza v. Licensing Board of Fall River, 827 N.E.2d 180, 187 (Mass. 2005), this court finds no reason to do so in this case.  National Amusements, Inc., 43 F.3d at 749 (affirming district court's simultaneous treatment of First Amendment claim and art. 16 claim).

Dispositively, plaintiff fails to proffer any Massachusetts case law to support a different outcome for his art. 16 free speech claim.  Mesnick v. General Electric Co., 950 F.2d 816, 829 n. 11 (1st Cir. 1991) (plaintiff responding to summary judgment

18

of state and federal civil rights claims with entirely federal precedent waives the argument that state law is more favorable); <u>Planned Parenthood League of Massachusetts, Inc. v. Attorney General</u>, 464 N.E.2d 55, 57 n. 4 (Mass. 1984) (application of similar state and federal free speech standard is appropriate where neither party argues to the contrary).  Accordingly, the art. 16 free speech claim fails to withstand summary judgment for the reasons set forth <u>supra</u>.

B.  <u>Tortious Interference with Business Relationships</u>

In Count III, plaintiff alleges that defendant tortiously interfered with his business relationships in the Towns of Rowley and Newburyport.  (Docket Entry # 17, p. 7).  To succeed, plaintiff must show (1) a business relationship, (2) the defendant knew of the relationship, (3) the defendant intentionally and maliciously interfered with the relationship and (4) the plaintiff was harmed.  <u>Zimmerman v. Direct Federal Credit Union</u>, 262 F.3d 70, 76 (1st Cir. 2001).

Defendant satisfied its burden on summary judgment by pointing out that plaintiff does not have evidence to support the claim of tortious interference.  (Docket Entry # 12, p. 6); <u>Celotex</u>, 477 U.S. 317.  The burden therefore shifts to the non-moving party, plaintiff, to "demonstrate that a trier of fact reasonably could find in his favor."  <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306 (1st Cir. 1997).  Plaintiff "may not rest upon the

mere allegations or denials" but must "by affidavits or as otherwise provided in this rule . . . set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

Plaintiff, however, only alleges that defendant intentionally interfered with his business by "publicly ridiculing the plaintiff, refusing to issue applications for an installer's license, and illegally condemning the plaintiff's property without proper notice."  (Docket Entry # 17, p. 7). Plaintiff fails to support these allegations with admissible evidence such as affidavits or depositions of town officials showing tortious motivation.

Furthermore, none of the affidavits, depositions or answers to interrogatories in the record suggest that defendant intentionally and maliciously interfered with plaintiff's business relationships.  (Docket Entry # 13, Ex. 9, No. 24). Summary judgment is therefore appropriate because plaintiff raises no genuine issue of fact that would allow a jury to find in plaintiff's favor.  Fed. R. Civ. P. 56(c); <u>Hinchey v. Nynex Corp.</u>, 144 F.3d 134, 140 (1st Cir. 1998).

In his response to summary judgment on Count IV, plaintiff cites criminal cases involving corruption and RICO charges against public officials.  This allegation is unavailing because plaintiff fails to proffer any evidence that defendant acted in a

20

corrupt manner.  Summary judgment is therefore appropriate on Count IV.

C.  Defamation

In Count III, plaintiff alleges that Selectman Madden defamed plaintiff to the press and in a town meeting.  (Docket Entry # 17, p. 6, ¶ 20).  To establish a defamation claim under state law, a plaintiff must show that (1) the statement subjected the plaintiff to public scorn, contempt or ridicule, (2) the statement was made to a person other than the plaintiff, (3) the statement was false and (4) the plaintiff suffered specific special damages.[13]  Yohe v. Nugent, 321 F.3d 35, 40 (1st Cir. 2003).  The plaintiff bears the burden of showing that each allegedly defamatory statement is "materially false."  Id. at 41; Dulgarian v. Stone, 652 N.E.2d 603, 606 (Mass. 1995).  "Under the First Amendment there is no such thing as a false idea."  Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-340 (1974).

The Daily News quoted Selectman Madden on January 10, 2001, stating, "We as town officials cannot allow an individual to terrorize town employees."  (Docket Entry # 13, Ex. 15B & 15C).  Without dwelling on the first two prongs of the defamation test,

---

[13]  Plaintiff is not a public figure.  The "actual malice" standard, therefore, does not apply.  Gertz v. Robert Welch, Inc., 418 U.S. 323, 345-348 (1974) (heightened showing of actual malice only applies to plaintiffs who are public figures); Mangual v. Rotger-Sabat, 317 F.3d 45, 66 (1st Cir. 2003).

21

plaintiff fails to show that the statement was false.[14]  In
response to summary judgment, plaintiff states that he did not
*intend* to threaten town employees, but he failed to submit
affidavits or depositions of town employees showing that his
conduct did not instill fear in them.  Chairman Costello's
affidavit asseverates that he felt threatened by plaintiff's
speech.  (Docket Entry # 13, Ex. 8).  Likewise, Selectman Madden
also interpreted plaintiff's speech as threatening.  (Docket
Entry # 13, Ex. 6, p. 26).

    As stated <u>supra</u>, a nonmoving party may not respond to
summary judgment with mere allegations of fact.  Instead, he must
produce admissible evidence that would allow a jury to find for
him at trial.  <u>Rogers v. Fair</u>, 902 F.2d 140, 143 (1st Cir. 1990).
Because plaintiff failed to submit evidence showing the falsity
of defendant's statements, the defamation claim fails to
withstand summary judgment.  <u>Id.</u>

    Plaintiff alleges that the Selectman Madden defamed
plaintiff during the January 8, 2001 meeting and that the letter
of January 9, 2001, was defamatory.  The heated conversation
between plaintiff and defendant reported in the newspaper does
not satisfy the falsity prong of the defamation test because it
was a discussion of each individual's interpretation of events

---

    [14]  To "terrorize" is synonymous with instilling intense
fear.  <u>The Random House College Dictionary</u>, 1357 (1980).

that actually occurred.  See <u>Philadelphia Newspapers, Inc. v.</u>
<u>Hepps</u>, 475 U.S. 767, 776 (1986) (where the plaintiff is a private
figure and newspaper articles are a matter of public concern,
there is a constitutional requirement that the plaintiff show
falsity).  The letter of January 9, 2001, was not defamatory
because it was not false.

      In sum, defendant pointed out that plaintiff does not have
sufficient evidence to raise a genuine issue of fact for trial on
any of his claims.  Plaintiff's response to summary judgment
failed to support his claims with any admissible evidence that
would allow a reasonable jury to find for plaintiff as a matter
of law.  Consequently, summary judgment is granted on all counts.
To the extent plaintiff's other arguments have not been
addressed, they lack merit.  <u>Frustaglia v. Secretary of Health</u>
<u>and Human Services</u>, 829 F.2d 192, 196 (1st Cir.  1987).


                          <u>CONCLUSION</u>

      In accordance with the foregoing discussion, defendant's
motion for summary judgment (Docket Entry # 11) is **ALLOWED** and
plaintiff's opposition to defendant's motion for summary judgment
(Docket Entry # 15) is **DENIED**.  A final judgment shall issue in
accord with this opinion.

                              /s/   Marianne B. Bowler
                         **MARIANNE B. BOWLER**
                         United States Magistrate Judge